HESTER, Judge:
 

 Peter David Moyer appeals from the February 8, 1993 Lehigh County Court of Common Pleas order which dismissed his petition for habeas corpus.
 
 [1]
 
 The court determined that the Commonwealth had presented a prima facie case on the charges of involuntary manslaughter, homicide by watercraft while under the influence, operating a watercraft under the influence, and reckless and negligent operation of watercraft. Appellant argues that the Commonwealth failed to establish the requisite prima facie showing of careless operation of the
 
 *445
 
 watercraft, refutes the claim that he operated his motorcraft under the influence of alcohol, and maintains that there is insufficient evidence that his conduct caused the death of the victim. We are constrained to reverse in part and affirm in part.
 

 The relevant facts and procedure follow. The Commonwealth’s sole eyewitness, Robert Williams, established that on July 19, 1992, at about 6:30 p.m., appellant was operating a “runabout” on the Lehigh River in an area known as Kimmets Lock and was traveling at approximately twenty-five miles per hour.
 
 [2]
 
 Mr. Williams, an acquaintance of both appellant and the victim, gauged the speed at which the victim, Eric Hennigh, drove his jet ski to be about the same as appellant’s craft, and approximately forty feet to the right of appellant’s path. The witness explained that both the victim and appellant were acquaintances and had gathered at the river with a group of friends for the day. Mr. Williams stated that while he had observed appellant drink one beer while cooking on the beach earlier in the day, he had observed nothing about appellant’s behavior to indicate that he was intoxicated. On a trestle six to eight feet from the waterway, a group of swimmers had gathered, one of whom was Richard Moore. As the victim made what would be his last pass by the trestle, Moore, who was standing on exposed rocks near the trestle, swung a five to six foot stick at the victim as he drove past the trestle. Reproduced Record, (“R.R.”), at 149a. Uncontradicted eyewitness testimony established that after Moore swung the stick at the victim, the victim turned sharply to the left, lost control of the jet ski, and veered directly into the path of appellant’s craft. R.R. at 97a.
 
 [3]
 
 Appellant’s boat collided with the jet ski. Mr. Williams admitted that he told appellant that appellant could not have avoided the accident, because it took only a “split second” for the jet ski to travel the forty feet into the path of appellant’s boat. R.R. at 67a, 46a. Moore fled the
 
 *446
 
 scene after the impact, but appellant, whose craft came to an abrupt halt following the collision, jumped into the river and swam over to aid the victim, who was floating face down. The victim was pronounced dead three hours later at Lehigh Valley Hospital. The autopsy determined that the victim died as the result of multiple traumatic injuries. It also revealed that the victim had an elevated blood alcohol level.
 
 [4]
 

 Lehigh County Sheriffs Department and Pennsylvania Fish Commission Deputy Waterways Conservation Officer Elwood Buchman, Jr. arrived at the scene within minutes after the victim and his passenger had been removed from the river and began their investigation. Officer Buchman testified that by virtue of his employment, he had received training in the detection of persons under the influence of alcohol and first aid. R.R. at 101a. He admitted, however, that he had never investigated a serious boating accident and could not be sure if the demeanor and reactions of people involved in an accident could be the result of shock or hysteria as opposed to intoxication. R.R. at 123a. Further, he admitted that it was possible that an individual could be angry or irate without being under the influence of alcohol, especially if they had just been involved in a serious boating accident.
 

 Officer Buchman testified, however, that he concluded that appellant was intoxicated based upon several factors. Specifically, he observed appellant navigate through a grassy area of the park and over a gravel driveway to an area where the patrol car was located and determined that appellant was “a little unsteady on his feet, [and] swaying a little bit.” R.R. at 109a. Moreover, the officer noted that appellant was hostile and irate about the presence of children on the trestle and the officers’ continuing inability to control their pranks.
 
 [5]
 
 Further,
 
 *447
 
 the officer testified that appellant admitted he was the operator of the boat and that he had been drinking a little. R.R. at 110a.
 
 [6]
 
 Therefore, the officer concluded that appellant was under the influence of alcohol and not capable of operating his watercraft safely based upon his hostile, angry demeanor, his irate reaction to the presence of children on the trestle, his bloodshot eyes and constricted pupils, his swaggering gait, and the odor of alcohol on his breath. The officer could not determine how much alcohol appellant had consumed and did not ask appellant if he had anything to drink following the accident.
 

 Allentown Police Detective Michael Millan arrived at the scene at about 8:00 p.m. He, too, had received training in the identification of individuals under the influence of alcohol. After speaking to appellant, he, too, concluded that appellant was intoxicated. He detected an odor of alcohol on appellant, noted his anger about the incident and the presence of children on the trestle, and observed appellant’s bloodshot eyes and heavy eyelids. Detective Millan asked appellant to accompany him to police headquarters and submit to a breathalyzer test. Appellant complied but was not told he could opt to decline and lose his operator’s license. Appellant took the test at 9:05 p.m., two and one-half hours after the incident. The results were recorded at .18%. No blood test was requested. Appellant’s boat and the victim’s jet ski were seized and searched. Sixteen empty beer cans were found on appellant’s boat, nine of which were appellant’s brand of choice.
 
 [7]
 

 
 *448
 
 Based upon the above evidence, appellant was arrested and charged with one count each of involuntary manslaughter, 18 Pa.C.S. § 2504(a); homicide by watercraft while operating under the influence, 30 Pa.C.S. § 5502.1(a); operating a watercraft while under the influence 30 Pa.C.S. § 5502(a)(1) and (a)(4); and reckless operation of watercraft, 30 Pa.C.S. § 5501(a). At appellant’s preliminary hearing on October 6, 1992, Richard Williams, the Commonwealth’s sole eyewitness and an acquaintance of both the victim and appellant, testified that he saw appellant drink one can of beer while standing on the beach but observed nothing to indicate that appellant was boating under the influence of alcohol. R.R. at 58a, 23a. Williams testified that appellant drove the runabout in a straight line and could have done nothing to avoid hitting the victim since only a “split second” of time elapsed after Moore swung the stick and the jet ski traversed the forty feet between the two vehicles. R.R. at 67a;
 
 see also
 
 R.R. at 46a. Williams could not ascertain whether appellant began decelerating prior to impact or tried to avoid hitting the victim’s jet ski. R.R. at 47a. Williams testified that he saw the victim drink one bottle of beer earlier in the day on the beach while he was cooking. Williams noted that appellant was extremely upset by the incident. R.R. at 96a.
 

 Based upon the information gathered and testimony offered, the magistrate found a prima facie case on all charges. On December 2, 1992, appellant filed a petition for writ of habeas corpus, or in the alternative, requested a dismissal of all charges for lack of a prima facie case on each count. Appellant challenged the magistrate’s determination claiming there was no evidence to show reckless or careless operation of his boat, and there was ho evidence to show that appellant caused the collision. In an order dated February 8, 1993, appellant’s petition was dismissed. The court also dismissed appellant’s request to certify the case, pursuant to 42 Pa.C.S. § 702(b), for purposes of allowing an interlocutory appeal.
 

 On March 10, 1993, appellant filed a petition for review to this court. On January 6, 1994, we granted appellant permission to pursue an interlocutory appeal. He now challenges the
 
 *449
 
 magistrate’s finding based upon a lack of evidence concerning causation. He argues that he was operating his boat in a straight line at a safe speed and distance from the victim. Further, appellant maintains that he did nothing to cause the victim to swerve into his path, but it was the victim’s evasive action with respect to Moore which caused the collision. He alleges that the Commonwealth’s evidence wholly fails to establish that he could have avoided the collision. Therefore, appellant asserts that the Commonwealth failed to show that his conduct caused the victim’s death. We agree.
 

 The Commonwealth maintains that it presented sufficient evidence at the preliminary hearing to support all charges against appellant. It relies upon the observations of the investigating officers who concluded that appellant was operating his boat while under the influence of alcohol to a degree that rendered him incapable of operating the motorboat in a safe manner, the breathalyzer test, and the evidence of the empty beer cans seized from appellant’s boat. Further, the Commonwealth asserts that appellant was operating his motorboat recklessly because he was traveling at a speed higher than that which was safe in that area of the river and but-for the reckless operation of his craft, could have, but failed to, take evasive action even though he saw Moore strike the victim with the stick.
 
 [8]
 

 In considering the merits of appellant’s claim, we utilize the following well-settled standard for determining the sufficiency of the evidence presented at a preliminary hearing.
 

 
 *450
 
 At a preliminary hearing the Commonwealth, bears the burden of establishing a prima facie case that a crime has been committed and that the accused is probably the one who committed it.
 
 Commonwealth v. Wojdak,
 
 502 Pa. 359, 367, 466 A.2d 991, 995 (1983). To sustain that burden the Commonwealth must produce evidence that, if accepted as true, would warrant the ... trial judge to allow the case to go to the jury.
 
 Id.,
 
 [466 A.2d] at 995-996. The prima facie standard requires that the Commonwealth produce evidence of the existence of each and every element of the crime charged; consequently, absence of evidence of a material element is fatal.
 
 Id.
 
 [466 A.2d] at 996-997. This standard does not require that the Commonwealth prove the elements of the crime beyond a reasonable doubt nor that evidence is available that would prove each element at trial beyond a reasonable doubt.
 
 Commonwealth v. Snyder,
 
 335 Pa.Super. 19, 23, 483 A.2d 933, 935 (1984).
 

 Commonwealth v. Styler,
 
 411 Pa.Super. 133, 135, 600 A.2d 1300, 1301 (1991),
 
 quoting Commonwealth v. Austin,
 
 394 Pa.Super. 146, 150-51, 575 A.2d 141, 143 (1990). It is with these principles in mind that we consider the evidence presented by the Commonwealth at the preliminary hearing.
 

 Appellant first argues that the Commonwealth failed to sustain its burden of proof with regard to the element of causation on the involuntary manslaughter charge.
 
 [9]
 
 While
 
 *451
 
 appellant incorrectly relies upon case law which pertains to stricter burdens of proof applied only at trial, we agree, nonetheless with his starting premise that the Commonwealth must provide some evidence as to causation in order to sustain the charge of involuntary manslaughter. Our review of the record reveals that the Commonwealth has failed in this regard.
 

 The Commonwealth defends the district justice’s ruling and argues that it presented testimony which indicated that appellant was traveling at a high rate of speed and failed to take any action to avoid the collision. In it’s brief, the Commonwealth concludes,
 

 All the evidence presented at the preliminary hearing clearly indicated that [appellant] either failed to perceive the risk of the collision with the victim, or that he perceived the risk and consciously disregarded such a risk. Based on the evidence, a jury may fairly conclude that such conduct by [appellant] involved a gross deviation from the standard of care that a reasonable person would observe in [appellant’s] situation.
 

 Commonwealth brief at 13.
 

 In order to sustain a charge of involuntary manslaughter, the Commonwealth must show that the appellant’s conduct was directly and substantially linked to the victim’s death.
 
 Commonwealth v. Long,
 
 425 Pa.Super. 170, 624 A.2d 200 (1993). We have determined that in order to sustain a conviction for involuntary manslaughter, a defendant’s conduct must be the antecedent but-for which the result in question would not have occurred.
 
 Id.
 
 Specifically, it would be unfair to hold an individual responsible for the death of another if his actions are remote or attenuated and the victim’s death was attributable to other factors.
 
 Id.
 

 
 *452
 
 The Commonwealth bases its theory of causation on the allegation that appellant could have avoided the collision by veering his boat in another direction. However, its evidence fails to establish that appellant could have changed the direction of his boat in time to avoid striking the victim. The Commonwealth presented no evidence regarding reaction times. Meanwhile, the eyewitness testimony provided a major stumbling block for the Commonwealth due to the fact that it repeatedly indicated there was nothing appellant could have done to avoid hitting the victim because he veered into appellant’s path in a “split second.”
 

 A review of the record reveals that there was
 
 no
 
 evidence that appellant could have avoided this tragic accident. The Commonwealth presents
 
 no
 
 support for its conclusion that appellant could have swerved to avoid striking the victim. Specifically, the Commonwealth eyewitness testimony established that appellant and the victim were traveling between twenty-five and thirty miles per hour. Simple calculations indicate that at 30 miles per hour, a vehicle travels at the rate of forty-four feet-per-second, while traveling at 25 miles per hour, a vehicle travels at thirty-six feet-per-second. Eyewitness testimony also established that the victim was located ten to forty feet to the right of appellant’s motorboat when Moore struck him with the stick. In other words, in less than a second, two objects traveling about forty feet-per-second crossed paths. The Commonwealth presented no testimony on reaction time, either eyewitness or expert, to support its claim that any person
 
 could
 
 have swerved their boat, given the time frame that it established. Yet, the Commonwealth’s case on causation consists solely of its position that defendant caused the death by failing to swerve his boat. The evidence it presented, however, is inadequate to demonstrate that this inaction caused the victim’s death due to the fact that there is serious doubt as to whether any reasonable person could have avoided the unfortunate collision.
 
 See Commonwealth v. Gilliland,
 
 281 Pa.Super. 354, 422 A.2d 206 (1980) (failure to see another boat in time to avoid collision does not rise to level of
 
 *453
 
 gross negligence necessary to convict of involuntary manslaughter).
 

 Clearly, the Commonwealth is attempting to bootstrap the evidence concerning appellant’s state of intoxication into an inference that he could have avoided the accident. Meanwhile, the speed-to-distance ratios at which the vehicles traveled refute the assumption that any person in appellant’s position could have avoided the collision. It is the Commonwealth’s burden to present some evidence on each element, and they have not presented evidence with regard to causation.
 

 Appellant also challenges the magistrate’s determination the Commonwealth proved a prima facie case on the charge of reckless operation of watercraft.
 
 [10]
 
 Our review of the record reveals that the Commonwealth presented no eyewitness testimony to support its claim that appellant operated his boat in a reckless manner or in such a way as to evidence a disregard for human life or an indifference to consequences. All uncontradicted eyewitness testimony supports appellant’s assertion that he was driving in a safe manner, but the tragic accident was unavoidable. Instead, the Commonwealth relies on the investigating officers’ testimony that appellant failed to swerve as the basis for its claim that appellant operated his craft with careless disregard for the safety of others. It does not, however, provide us with any evidence to support the assertion that failure to swerve constitutes a gross deviation from the standard of care a reasonable person in appellant’s situation would observe. Instantly, there was one eyewitness to the accident, and he testified that the victim traveled into appellant’s path so quickly that appellant had no time to react. Since it is clear that the Commonwealth has failed to produce evidence that appellant caused the death of the victim because he acted in a reckless or grossly negligent manner, we must conclude that the Commonwealth failed to prove a prima facie
 
 *454
 
 case with regard to charge of the reckless operation of watercraft.
 

 Next, we review appellant’s claim concerning the validity of the charge of homicide by watercraft while operating under the influence of alcohol. 30 Pa.C.S. § 5502.1 provides:
 

 Any person who unintentionally causes the death of another person as the direct result of a violation of section 5502 (relating to operating watercraft under influence of alcohol or controlled substance) and who is convicted of violating section 5502 commits a felony of the third degree when the violation is the cause of death....
 

 Appellant maintains that the Commonwealth has not proven a prima facie case as to the element of causation. Specifically, he argues that it did not prove that appellant
 
 caused
 
 the victim’s death
 
 because
 
 he was intoxicated. Appellant claims there was no eyewitness testimony that he could have swerved his boat, but only bold assertions from the investigating officers who were not present at the time of the accident to support the Commonwealth’s position that appellant’s level of intoxication prevented him from operating his vehicle in a safe fashion thereby
 
 causing
 
 the victim’s death due to alcohol consumption. While appellant may place undue reliance upon the case law he presents, we agree, nonetheless, with his premise regarding the Commonwealth’s failure to prove causation.
 

 In
 
 Commonwealth v. Heck,
 
 517 Pa. 192, 535 A.2d 575 (1987), our Supreme Court discussed the elements necessary to convict under 75 Pa.C.S. § 3732, homicide by vehicle, an analogous crime to the one at issue. First, the Commonwealth must establish that appellant deviated from the standard of care established by the underlying traffic regulation which has been violated
 
 and
 
 that the violation of the regulation
 
 caused
 
 the victim’s death.
 
 Accord Commonwealth v. Bartolacci,
 
 409 Pa.Super. 456, 598 A.2d 287 (1991) (under section 3732, Commonwealth has the burden of proving beyond a-reasonable doubt the causal connection between the victim’s death and the defendant’s wrongful act).
 

 
 *455
 
 Our review of the Commonwealth’s case reveals that its theory of causation combines the unsupported allegation that appellant could have, but failed to, swerve, with the fact that he had been drinking earlier in the day. It then concludes that appellant failed to swerve due to diminished reflex time relating to his alcohol consumption. Furthermore, we have established that the Commonwealth has not proven that appellant drove in a reckless manner or that swerving was a possible maneuver under the circumstances. Together, these deficiencies in the Commonwealth’s case constitute a gap in the weave of causation with regard to establishing a prima facie case for appellant’s preliminary hearing. There was no evidence that appellant operated his boat in an unsafe manner, and there was no evidence that appellant caused the accident.
 

 Finally, appellant argues that the Commonwealth presented
 
 no
 
 evidence that he operated his motorboat while under the influence of alcohol where the amount of alcohol by weight in the blood of the person is 0.10% or greater. 30 Pa.C.S. § 5502(a)(4). We must disagree. Appellant does not dispute the observations of witnesses at the scene who testified that his pupils were constricted and his eyes bloodshot, that he walked with a swaggering gait, or that he was angry and used profanity. He argues, and his witnesses agreed, that this behavior was not proof positive that he was intoxicated but could have been a normal variant of the type of behavior an individual who recently had been traumatized would exhibit. Acquaintances of appellant denied that he smelled of alcohol or acted intoxicated, but the testimony of the investigating officers indicated otherwise. While the import of the breathalyzer test, taken hours after the accident might not be controlling or dispositive, it is evidence of intoxication. Further, the empty beer cans found on appellant’s boat create a presumption that appellant may have been drinking on the day of the accident. Certainly, the evidence presented was not conclusive as to time of consumption or the amount, and conversion calculations as to blood alcohol weight with regard to the breathalyzer test would be necessary before it could be considered conclusive evidence, but collectively the Common
 
 *456
 
 wealth has presented evidence sufficient to bring its case to the jury.
 

 In conclusion, we are constrained to conclude that the Commonwealth failed to establish a prime facie case to sustain the charges of involuntary manslaughter, reckless operation of a watercraft, and homicide by watercraft under the influence. Consistent with this memorandum, however, the Commonwealth has presented a prima facie case of boating while under the influence of alcohol, and appellant must face proceedings on this charge.
 

 Order reversed in part and affirmed in part. Case remanded. Jurisdiction relinquished.
 

 [1]
 

 . By order dated January 6, 1994, we granted appellant permission to appeal this interlocutory order.
 

 [2]
 

 . There are no speed limit restrictions for motorcraft on the Lehigh River.
 

 [3]
 

 . Allentown Police Officer Michael Millan testified that Richard Moore, who confessed to swinging the stick in front of the victim, estimated that the jet ski was traveling about
 
 ten
 
 feet away from appellant's boat.
 

 [4]
 

 . The autopsy was performed at 10:20 a.m. on July 20, 1992. The victim was pronounced dead on July 19, 1992, at 9:28 p.m. The victim’s blood alcohol level was .05%. No calculation was presented to allow for diminished blood alcohol levels due to either the fifteen hours which had elapsed since the accident or the internal bleeding suffered by the victim.
 

 [5]
 

 . Apparently, both in prior summers and earlier in the summer of 1992, boaters had filed complaints about the interference caused by children
 
 *447
 
 playing on the trestles. Appellant was not known to be one of the individuals who had filed a complaint. R.R. at 120a.
 

 [6]
 

 . There is a dispute in the transcript as to who operated appellant’s boat at the time of the accident. Lisa Neetz, a passenger riding with appellant at the time the accident occurred, told officers that she was driving the craft at the time of collision. R.R. at 134a. Ms. Neetz was not asked to take a breathalyzer test.
 

 [7]
 

 . Waterways Conservation Officer Fred Mussel testified that appellant told him that he had brought some of the empty beer cans with him, and others were picked up from the riverbank. Appellant also told Officer Mussel that he consumed his last can of beer around five o’clock.
 

 [8]
 

 . There was no evidence presented at the preliminary hearing which indicated that appellant was speeding, or that appellant was able to avoid the collision given the proximity of the victim's jet ski to appellant’s motorboat. Specifically, uncontradicted testimony revealed that there are no speed limits for boats or jet skis on the Lehigh River.
 

 There was testimony that if appellant were operating his motorboat between 25 miles per hour and 35 miles per hour, then he would create a wake.
 
 If
 
 swimmers were present on the shore, then appellant would have been operating his boat in excess of the minimum slow swell height speed. There was testimony, however, that no swimmers were present on the shore at the time of the accident.
 
 See
 
 R.R. at 214a. Further, uncontradicted eyewitness testimony revealed that appellant could not have avoided the accident because it happened too quickly.
 
 See
 
 R.R. at 45-6.
 

 [9]
 

 . "A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.” 18 Pa.C.S. § 2504(a).
 

 18 Pa.C.S. § 302(b)(3) provides:
 

 A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor’s conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor’s situation.
 

 18 Pa.C.S. § 302(b)(4) provides:
 

 A person acts negligently with respect to a material element when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk
 
 *451
 
 must be of such a nature and degree that the actor’s failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor’s situation.
 

 [10]
 

 . Reckless operation of a watercraft involves a gross deviation from the standard of care that a reasonable operator of a watercraft should observe under the circumstances. 30 Pa.C.S. § 5501(a).
 

 Negligent operation of a watercraft involves a deviation from the ordinary standard of care that a reasonable operator of a Watercraft should observe under the circumstances. 30 Pa.C.S. § 5501(b).