## COMMONWEALTH of Pennsylvania

### v.

### A.D.B., Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 23, 1998.

Decided April 28, 2000.

**440**

Donald E. Lewis, Meadville, for appellant.

Francis J. Schultz, Meadville, for appellee.

Before FLAHERTY, J., LEADBETTER, J., and NARICK, Senior Judge.

FLAHERTY[1], Judge.

A.D.B.,[2] Appellant, is a juvenile (Juvenile) and appeals an adjudication of the Crawford County Court of Common Pleas (trial court) finding him delinquent of three summary offense violations of the Fish and Boat Code (Code) and the sentence that was subsequently imposed for those violations.[3] We reverse on all counts.

Around 10:00 p.m. on August 19, 1996, Juvenile was operating a small motorboat on Conneaut Lake with his 18 year-old cousin (Passenger), (collectively the boys). They were going to their grandparents' cottage. It was dark, overcast and the small motorboat in which the boys were travelling was not equipped with a headlight (which is not required of small craft.)[4]

Passenger was a prosecution witness who testified that he was riding in the left side of the boat (RR at 68) watching the water ahead of them and that he observed Juvenile looking straight ahead. (RR at 65). Passenger testified initially that the speed at which they were travelling was "moderate," (RR at 50) that he felt safe, that the boat was handling fine and that he was able to stand without trouble in the boat. (RR at 57–58).[5] While traveling on the water, approximately 100 yards off shore, Passenger saw a single white light suddenly flicker on in the darkness approximately thirty to forty feet in front of them, which light was not immediately identifiable as a boat, since there were no boat running lights on either side of the flickering light that were visible to them. (RR at 59 – 60 and 76.).[6] When they were approximately ten to fifteen (10 – 15) feet away from the stopped boat, Passenger noticed that the "light" was, in fact, a boat

---

1. This case was reassigned to author on February 16, 2000.

2. The caption has been amended by court order, *sua sponte,* to conform to the Juvenile Act, 42 Pa.C.S. § 6307.

3. The Code is the Fish and Boat Code, the Act of October 16, 1980, *as amended,* P.L. 996, 30 Pa.C.S. §§ 101–7309. Chapter 51 of the Boat Code relates to general boating regulations. Chapter 55 of the Code is dedicated to the "Operation of Boats." The Commonwealth has implemented the Code by promulgating regulations in the Pennsylvania Administrative Code at 58 Pa.Code, Chapters 51–119.

4. Juvenile's boat was equipped with the proper lighting prescribed by 58 Pa.Code § 95.3. The manufacturer installed lighting is not required to enable the operator to see forward,

but to alert other boats of the direction of travel and position of the boat.

5. In response to Passenger's answer that the boat was "going moderate," the prosecution then asked him on direct examination:

Q. When you say moderate, do you mean pretty fast or sort of fast?
 A. Sort of fast.
Juvenile's attorney then objected to the question and answer based upon lack of foundation for the term "fast," which objection the trial court overruled stating, "Sort of fast means nothing to me but that's his explanation of what moderate means."

6. The boys would later learn that the light they saw go on was a light in the back of the boat, indicating that the boat, which was stopped, was facing the same direction as the boys were traveling.

stopped in front of them and yelled, "it's a boat." Concurrently with Passenger's outburst, Juvenile made an evasive turn to the right to avoid the boat (RR at 63) and successfully avoided a collision with the stopped boat by going around it at a distance of four or five feet. (RR at 61, 70.)

While Juvenile was turning his boat to the right, Mark Paga (Decedent) dove headfirst out of the stopped boat directly into the path of the Juvenile's boat. (RR at 62.). The engine then bogged down. Passenger could tell that Juvenile's boat had hit something. (RR at 55.). Juvenile then brought the boat to a stop, turned around and went back. The Decedent said: "Help me, my arm is gone." (RR at 56).

The boys then lifted Decedent into Juvenile's boat. Passenger, who was a lifeguard in high school, applied direct pressure to the place where Decedent was bleeding and Juvenile drove immediately to shore, where two or three rescuers jumped on the boat and took over. The boys then got off the boat. (RR at 56). Shortly thereafter, Decedent died of the injuries sustained in the accident

The Crawford County Coroner testified that he pronounced Decedent dead, that an autopsy report revealed the cause of death to be secondary to a sharp force laceration to the right upper extremity causing exsanguination (bleeding to death), that he designated the manner of death accidental and, then, without further explanation, the prosecution also introduced into evidence that the result of toxicology exams on Decedent revealed a blood alcohol level of .082.

Trooper Raymond Collins of the Pennsylvania State Police testified regarding his investigation of the accident, including statements given to him by Juvenile on the night of the accident and that the result of a blood alcohol test administered to Juvenile that night was 0.00. (RR at 77). The Trooper could not opine as to the safeness of any speed.[7]

Thomas Tarkowski, a Waterways Conservation Officer with the Pennsylvania Fish & Boat Commission (PFBC) testified regarding his investigation, including his observations of the accident scene on the night of the accident and the results of his interviews with the boys that night. Mr. Tarkowski testified that Juvenile reported that he had twenty to one-hundred hours of boating experience, which in Mr. Tarkowski's opinion, "was not a terrible rookie," that Juvenile reported having twenty to one-hundred hours of experience on other crafts, and that, he reviewed the PBFC records and verified that Juvenile had taken a PBFC boating safety course. (RR at 87). Mr. Tarkowski inspected the boat that Juvenile was driving and determined that the boat contained an operational standard lighting system for all boats on inland waters.[8] Mr. Tarkowski also testified that Conneaut Lake is "an unlimited horsepower lake." (RR at 85).

After the fatal motor boat accident, Juvenile was charged in a juvenile court petition with five violations of the Code, as follows:[9]

1. Homicide by Watercraft, 30 Pa. C.S. § 5502.2, a third degree misdemeanor;

---

**7.** The record is void of any other evidence regarding the safeness, quickness or slowness of a particular speed.

**8.** Mr. Tarkowski detailed the lighting system on Juvenile's boat as a red and green light on the front of the boat (bow), small white lights surrounding the boat and a white light on the rear of the boat. No violation for inadequate lighting was ever charged since such lighting is more than the Code requires.

**9.** 30 Pa.C.S. § 5123(a)(1) permits the Commonwealth to promulgate regulations protecting the health and safety of persons on boats or within the waters of the Commonwealth and provides that any violation of such rule or regulation constitutes a summary offense of the second degree which has a penalty of $50 or imprisonment not exceeding 20 days. 30 Pa.C.S. § 923(6)(2).

2. Lookout Violation, 58 Pa.Code § 103.4, a third degree summary offense;

3. Safe Speed Violation, 30 Pa.C.S. § 5123(a)(1), 58 Pa.Code § 103.5, a second degree summary offense;[10]

4. Action to Avoid a Collision, 30 Pa.C.S. §.5123(a)(1), 58 Pa.Code § 103.6, a second degree summary offense;[11] and

5. Negligent Operation of a Watercraft, 30 Pa.C.S. § 5501(b), a first degree summary offense.[12]

On May 9, 1997, a single judge hearing was held in the trial court where, at the close of the Commonwealth's case in chief, trial court granted Juvenile's Motion for Judgment of Acquittal as to the charge of Homicide by Watercraft (R.R.30), dismissed the Lookout Violation (R.R.31) and found the Juvenile delinquent of Negligent Operation of a Watercraft, Safe Speed Violation and Failing to Avoid a Collision (R.R.31), all of which exposed Juvenile to maximum penalties of 130 days imprisonment or a fine of $200.00 or probation.

The trial court then fined the Juvenile $50 for each count found delinquent (totaling $150) and sentenced Juvenile to nine months (274 days) probation conditioned upon such events as attending school, listening to his mother, abstaining from drugs and alcohol and refraining from consorting with those who use drugs and alcohol, attending counseling sessions as required by the Probation Department and to report to the Probation Department as it shall determine.

From that adjudication and sentence, Juvenile appeals.[13]

On appeal, Juvenile contends that the Commonwealth failed to present sufficient evidence to prove beyond a reasonable doubt; 1) that the Juvenile was guilty of the summary charges of which he was found guilty; and 2) that the sentence imposed by the trial court was illegal and

**10.** 58 Pa.Code § 103.5 reads:
Safe speed.
(a) Every boat shall proceed at a safe speed so that it can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions.
(b) In determining a safe speed, the following factors shall be among those taken into account;
(1) State of visibility.
(2) Traffic density, including concentrations of other boats.
(3) Weather conditions, currents and the proximity of navigational hazards.
(4) Maneuverability of the boat with special reference to stopping distance and turning ability.

**11.** 58 Pa.Code § 103.6 reads:
Action to avoid collision.
Action taken to avoid collision shall, if the circumstances of the case admit, be positive, made in ample time and with regard to the observance of good seamanship.
(b) An alteration of course or speed to avoid collision shall, if the circumstances of the case admit, be large enough to be readily apparently to another boat visually; a succession of small alterations of course of speed shall be avoided.
(c) Action taken to avoid collision with another boat shall result in passing at a safe distance.

(d) If necessary to avoid collision or allow more time to assess the situation, a boat shall slacken its speed, stop altogether or reverse its means of propulsion.

**12.** 30 Pa.C.S. § 5501(b). Negligent Operation of Watercraft reads: No person shall operate a watercraft in, upon or through the waters of this Commonwealth in a negligent manner. A person commits negligent operation of watercraft if he operates the watercraft without due regard for the safety of persons or property in, upon or along the waters of this Commonwealth. Negligent operation of a watercraft involves a deviation from the ordinary standard of care that a reasonable operator of a watercraft should observe under the circumstances. A person who violates this subsection commits a summary offense of the first degree which carries a penalty of a fine of $100 or imprisonment not exceeding ninety days. 30 Pa.C.S. § 923(a)(1).

**13.** Trial court's order of May 9, 1997, has been appealed, not its opinion of August 14, 1997. Although the opinion contradicts the court order as to the lookout violation, it is not necessary to address the lookout violation because that dismissal is not an issue that has been appealed.

in violation of the discretionary sentencing powers.

 Our scope of review of a trial court's determination on appeal from a summary conviction is limited to determining whether there has been an error of law or whether the findings of the trial court are not supported by competent evidence. *Blobner v. Commonwealth*, 144 Pa. Cmwlth. 100, 600 A.2d 708 (1991).[14] In criminal law, there is a continuing presumption of innocence. *Commonwealth v. Bonomo*, 396 Pa. 222, 151 A.2d 441 (1959). A state bears a never shifting burden of proof beyond a reasonable doubt of all the elements of a crime. *Commonwealth v. Hilbert*, 476 Pa. 288, 297, 382 A.2d 724, 729 (1978). There can be no burden on an accused to disprove an element of the offense. *Commonwealth v. Loccisano*, 243 Pa.Super. 522, 366 A.2d 276, 284 (1976). Furthermore, the burden of proof beyond a reasonable doubt applies to summary offenses as well as to other criminal charges. *Commonwealth v. Banellis*, 452 Pa.Super. 478, 682 A.2d 383 (1996).

 In examining Juvenile's second issue first, we must agree that the sentence was illegal with respect to the nine months or 274 days probation imposed. The Code provides a penalty of imprisonment not exceeding 20 days for each second degree summary offense and not more than 90 days for a summary offense of the first degree. 30 Pa.C.S. § 923(a)(1)(2). In the case *sub judice*, even if the three Juvenile convictions were upheld, the maximum penalty would be 130 days. In view of our decision on the following delinquency issues, however, a remand is not necessary.

The only eyewitness evidence of record to support the convictions is that of Passenger who first saw a single white light suddenly flicker on in the darkness when Juvenile's boat was only thirty to forty feet away from it. The light was not immediately identifiable as a boat until they were fifteen feet away, since there were no boat running lights on either side visible to them. (R.R. at 59 – 60 and 76).[15] This is the only admissible evidence which bears review, in light of Pennsylvania's rules of the road ("Rules of the Road"), to determine whether Juvenile adhered completely thereto.[16]

### Action to Avoid Collision.

 58 Pa.Code § 103.1(a) states that every boater is responsible for avoiding a boating accident and that the "Rules of the Road" are promulgated to give predictability to meeting, crossing and overtaking situations, but specifically states that this section does not replace accurate analysis of the situation and taking necessary action to avoid collision, even if it means diverging from this subpart.

In order to determine the proper action in a collision situation, the state has promulgated rules in 58 Pa.Code §§ 103.9–14 to address the action that boats overtaking another boat should take to avoid a collision. The evidence is uncontradicted that the flickering white light on Decedent's boat was suddenly turned on and that Decedent's boat was apparently stopped

---

**14.** In this instance, to support the adjudication of delinquency competent evidence would be sufficient credible evidence to sustain the prosecution's burden of proving beyond a reasonable doubt the violations of the elements of the statute considering all the inferences therefrom which the fact finder could have believed and, upon which, it could have based its verdict. *In re D.D.*, 409 Pa.Super. 35, 597 A.2d 648 (1991).

**15.** Trooper Collins testified at R.R. 76 that immediately after the accident, Juvenile reported that the lights on the boat had suddenly come on. Passenger testified to that directly at RR 59–60, and the trial court so found as a fact.

**16.** The Commonwealth has implemented the Code, 30 Pa.C.S. § 5123(a)(1), by promulgating "Rules of The Road" in Title 58, Part II, Subpart C, 58 Pa.Code §§ 103.1–16.

It is noted, incidentally, that Decedent was also operating a boat at the time of the accident and was equally responsible as Juvenile to follow these regulations.

Juvenile had completed a PFBC boating safety course (R.R. 87).

facing in the same direction as Juvenile's boat (evidenced by the boys' ability to see only the flickering white light suddenly turned on which turns out to be the rear [stern] light on Decedent's boat). The Rules of the Road indicate that where, at night, a boat is able to see only another boat's sternlight, but neither of its sidelights, this situation is considered "overtaking," and requires Juvenile's boat to make any maneuvers to avoid Decedent's boat and requires Decedent to maintain course and speed.

Also, 58 Pa.Code § 103.10 states that in a head-on situation involving the risk of collision, each boat shall alter its course to the right so that each shall pass on the left side of the other and that when a boat is in doubt as to whether such a situation exists, it shall assume that it does exist and act accordingly. At night, without the advantage of seeing the red and green lights on the side of the boat indicating the right and left sides of Decedent's boat, respectively, it would be understandably difficult to assess in an instant whether the flickering white light which suddenly appeared was the stern or the masthead light and thereby determine in a split second or two if the risk of collision was head on or overtaking.[17] Juvenile, therefore, was justified in turning the boat to the right. Even if there were more time, Juvenile had a right to rely on the turn to the right rule, had a right to assume the boater being approached was also aware of it and would not, in a collision situation, dive "out of his boat right into the path of the boat which the Juvenile was operating." (Trial Court Opinion at R.R. 140).

58 Pa.Code § 103.6 further outlines the actions that should be taken to avoid a collision, including a positive alteration of course or speed to avoid collision, which shall be large enough to be readily apparent to another boat visually, including slackening speed, stopping or reversing propulsion, all of which should result in passing the boat at a safe distance. In the present instance, the uncontradicted evidence of the prosecution proves that Juvenile reacted in accordance with the Rules of the Road, making a turn to the right, which actually successfully avoided a collision with the boat—not narrowly by a few inches, but by four or five feet. There is, therefore, no evidence of record that sustains the Commonwealth's burden of proof beyond a reasonable doubt that Section 103.10, Action to Avoid Collision, was violated, especially since the uncontradicted prosecution evidence proves that Juvenile's action actually did avoid a collision and there was no collision with Decedent's boat. There is also no evidence that Juvenile failed to take action to avoid collision with Decedent who, for unknown reasons, dove out of his boat right into the path of a boat passing by four or five feet. There is, therefore, no evidence which supports that part of the trial court's May 9, 1997 order finding Juvenile delinquent of Failing to Avoid a Collision.

### Safe Speed Violation.

58 Pa.Code § 103.5, requires that every boat shall proceed at a safe speed so that it can take proper and effective action to avoid a collision and be stopped within a distance appropriate to the prevailing circumstances and conditions. Passenger's initial testimony was that they were traveling at a "moderate" speed. The prosecutor then, on direct examination and over objection, was permitted to suggest to his own witness that the only other way to describe moderate was to choose between "fast" and "sort of fast". The trial court admitted into evidence, over objection,—"sort of fast". Although Juvenile's attorney did not use the words "leading question" in his objection that the question and answer were based upon a lack of foundation for the term "fast", the concept that the prosecutor put words improperly into the mouth of his own witness was clearly conveyed. Further, the ques-

---

**17.** Although only a stern light is required, some boats add a white light at the top of the mast to further identify the presence or approach of the boat.

tion posed by the prosecutor of his own witness was a question which did lack foundation, was also leading and misleading, and when objected to should have been sustained. The term "sort of fast" was then used continually by both the prosecution and the trial court for the remainder of the hearing to describe the speed at which the boat was travelling, despite the fact that Passenger's original words for how fast the boat was travelling were not "sort of fast," but "moderate", that he was not an expert witness and, regardless, no foundation was ever laid to measure such concepts of speed in terms of the statutory violation charged, i.e., what speed is a safe speed under the circumstances? It was reversible error for the trial court to admit, and apparently rely upon, "sort of fast" as the only proof of a safe speed violation. The trial court states:

> It appears that the juvenile was maintaining a lookout and was operating his boat at an appropriate speed and under control. Nevertheless, as we have observed above, we believe that nighttime operation on a dark lake could predictably involve encounters with dimly lit or unlit objects. Under those conditions the operator of a watercraft should travel at a slower speed, could use flashlights or other means of illuminating objects, etc.

The problem is that the only frame of reference in the record would then compel a speculative inquiry into what is slower than "sort of fast"? Further, there was not even an attempt to qualify the prosecution's witnesses, Conservation Officer Tarkowski and/or Trooper Collins, or any other, as expert witnesses to provide testimony or other evidence that a flashlight or other means of illuminating objects were necessary in order for Juvenile to operate the boat that night when his boat already had more illumination than required by the Code and regulations and, further, since Officer Tarkowski testified there were no lighting violations.

In any event, there is no prohibition in the Code or in the departmental regulations against a boat going "fast", let alone "sort of fast". Neither is there any definition or standard in the Code or in the record for either term or for the measure of a speed that would describe what the trial court requires as "slower" than "fast" or "sort of fast" since the Commonwealth chose not to produce any expert opinion or other type of evidence to set some sort of standard.

Section 103.5 of the Code requires that in determining a safe speed, visibility, traffic density, weather conditions and currents, maneuverability of the boat, and stopping and turning capability shall be considered as factors. 30 Pa.C.S. § 5123(a)(1). The statutory safe speed limit is undefined. It may even be related to the status of Conneaut Lake being "an unlimited horsepower lake". But, there is no testimony by any expert or lay witness or even the State Water Conservation Officer that any type of unusual conditions required by Section 103.5 were present to prove that Juvenile was not travelling at a safe speed. On the contrary, Passenger testified that they were travelling moderately or, at worst, sort of fast. Passenger's concept of "fast", "sort of fast" or "moderate" and the adverse relationship, if any, of such terms to the maneuverability of the boat, stopping and turning capability, etc., was never proven to a point where it can even be inferred. More importantly, the statutory charge of safe speed violation, and its relationship to "sort of fast" remain in the record undefined, undiscussed, undetermined and without any standard by which to measure it.

 The traffic density was zero. There was no boat visible. The water was calm. The weather was cloudy, but clear. The current was such that Passenger could easily stand in the boat when it was moving. Juvenile's ability to maneuver the boat and to turn it was excellent considering that he first saw Decedent's boat when he was only ten to fifteen feet away from it

and still was able to clear it by four feet. There was no fact proven from which an unsafe speed can even be inferred, let alone proven beyond a reasonable doubt. The order of May 1, 1997, adjudicating Juvenile of being delinquent on the charge of violating the Safe Speed regulation is therefore, reversed.

### Negligent Operation of a Watercraft.

 Section 1 of the Code, · is fairly clear in setting forth a standard to determine negligent operation of a watercraft. "Negligent operation of a watercraft involves a deviation from the ordinary standard of care that a reasonable operator of a watercraft should observe under the circumstances." 30 Pa.C.S. § 5501(b). In this situation, the Commonwealth has promulgated the Rules of the Road to set forth the ordinary standard of care for operating watercraft safely upon the waters of the Commonwealth. The uncontradicted evidence of the prosecution proves that Juvenile adhered to all of these regulations. Where a statute imposes a duty, the violation of such statute must be proven before it is negligence *per se. J.E.J. v. Tri–County Big Brothers/Big Sisters*, 692 A.2d 582 (Pa.Super.1997), citing *Alfred M. Lutheran Distributors, Inc. v. A.P. Weilersbacher, Inc.*, 437 Pa.Super. 391, 650 A.2d 83, 91 (1994).

 Trial court concluded that ordinary negligence is the standard of care to determine culpability in the instant matter, since the Crimes Code definition of negligence at 18 Pa.C.S. § 302 does not apply to summary offenses defined by other statutes.[18] 18 Pa.C.S. § 305(a). The fact that the degree of culpability is changed in the usual summary offense from that of criminal negligence requiring a gross deviation from the standard of care used by a reasonable person to the ordinary standard of care of a reasonable boat operator under

the circumstances does not, however, change or shift the burden of proof which still requires the Commonwealth to prove that Juvenile did not use due care under the circumstances beyond a reasonable doubt.

Trial Court dismissed Juvenile's citation of *Commonwealth v. Moyer*, 436 Pa.Super. 442, 648 A.2d 42 (1994) as inapplicable to the present situation and distinguished the case upon a difference in facts. On the contrary, the facts are incredibly similar. Moyer was operating a watercraft and the victim was on a jet ski when a bystander on shore swung a stick at the victim as he drove past. The victim lost control of his jet ski and veered into the path of Moyer's boat, which struck and killed the victim. There was no testimony that the defendant was speeding. Even though *Moyer* failed to avoid the collision and his boat did strike and kill the victim (and even though *Moyer* was intoxicated), the Superior Court held that the defendant was not culpable because the situation was an unfortunate accident.

A review of the record reveals that there was no evidence that appellant [Moyer] could have avoided this tragic accident. The Commonwealth presents no support for its conclusion that appellant could have swerved to avoid striking the victim. Specifically, the Commonwealth eyewitness testimony established that appellant and the victim was traveling between twenty-five and thirty miles per hour. Simple calculations indicate that at 30 miles per hour, a vehicle travels at the rate of forty-four feet-per-second, while traveling at 25 miles per hour, a vehicle travels at thirty-six feet-per-second. Eyewitness testimony also established that the victim was located ten to forty feet to the right of appellant's motorboat when [bystander] struck [victim] with the stick. In other words, in less

18. The Crimes Code is the Act of December 6, 1972, *as amended*, P.L. No. 334, 18 Pa.C.S. §§ 101–9101. Ordinary negligence coincides in this case with negligence per se since the

governing statute, 30 Pa.C.S. § 5501(b), sets forth basically that ordinary negligence violates the statute. *See* footnote 11, *supra*.

than a second, two objects traveling about forty feet-per-second crossed paths. The Commonwealth presented no testimony on reaction time, either eyewitness or expert, to support its claim that any person could have swerved their boat, given the time frame that it established. Yet, the Commonwealth's case on causation consists solely of its position that defendant caused the death by failing to swerve his boat. The evidence it presented, however, is inadequate to demonstrate that this inaction caused the victim's death due to the fact that there is serious doubt as to whether any reasonable person could have avoided the unfortunate collision. *Moyer* at 648 A.2d 46–47.

■ As in *Moyer*, Juvenile's care as a reasonable boat operator is evident when considering the closing time which can be deduced from the Commonwealth's evidence produced through Passenger. The maximum distance between the boats when Decedent's boat was visualized was fifteen feet. As noted in *Moyer*, simple mathematics proves that a vehicle, or boat, travels at a speed in feet per second at approximately 1.5 times its miles per hour. (1 mile = 5,280 feet ÷ 3600 seconds (1 hour in seconds = 60 minutes × 60 seconds) = 1.47 feet per second.) If Juvenile was only traveling ten miles per hour, he would have closed the fifteen feet distance in only one second (10 m.p.h. × 1.5 = 15ft/second) including reaction time. Even if the sudden appearance of the single flickering light at a maximum of forty feet should be considered equivalent to the visibility of an entire boat, the distance would be covered at ten miles per hour in less than three seconds (forty feet ÷ 15 feet/second = 2.67 seconds) including reaction time. Either way, there is no evidence from which it can be inferred as proof beyond a reasonable doubt that Juvenile had sufficient time after Decedents boat became visible to avoid a collision with a man diving into the path of his boat while he properly swerved in the right direction. As in *Moyer*, Commonwealth also presented no expert testimony on reaction time, R.P.M.s or anything else sufficient to prove the conviction of negligent operation here. In the case *sub judice*, Juvenile avoided the collision, which is what is required in both the statute and the regulations. Like the facts in *Moyer*, this is just a tragic accident that can occur without fault.

Section 1 of the Code is a statute requiring a deviation from the ordinary standard of care of a reasonable operator under the circumstances. The trial court, in its opinion, relies upon Juvenile's failure to use a flashlight as a lack of due care without any proof in the record that such illumination was required, would have prevented the accident, what size flashlight would have been required, etc. The trial court's conclusion contains the only explanation of what was considered to be the ordinary standard of care, as applied to Juvenile, or in what other way Juvenile deviated therefrom so as to be statutorily negligent beyond a reasonable doubt:

> If the juvenile in the case at bar simply ran over a body swimming in the water at night under the facts and circumstances of this case there would be no criminal violation on the part of the juvenile.

> Here, however, the juvenile should have recognized that the waterway was dark, that whatever running lights there are on boats are small, that there is a possibility that a boat or an object may be on the lake without any lights on, or should not have been within thirty (30) to forty (40) feet of an unlit object without having seen it.

Trial Court Opinion R.R. 143, 144. By not making any further explanation in the August 14, 1997 opinion, the trial court is, in effect, imposing strict liability on Juvenile for the accident when neither the regulations, the statute nor the common law impose any such liability for not foreseeing that a boat would be violating the law by being on the water after dark without its

lights on and without any evidence to declare criminal liability for being within 30 to 40 feet of an unlit object without having seen it before then. The prosecution itself proved that Juvenile was not negligent, that his boat adhered to the regulations on illumination, by travelling at a speed safe enough to avoid a collision, and also proved that Juvenile was not travelling at any speed in violation of either the regulations or the statute. In fact, it was never proven that there was any kind of a particular speed limit on Conneaut Lake under any circumstances.

After a careful review of the testimony presented in the Reproduced Record, it is evident that there is no competent evidence to support the prosecution's burden of proving beyond a reasonable doubt any of the convictions of delinquency for negligence, speeding and failure to avoid a collision. Because of the criminal penalties to which Juvenile was exposed, the Commonwealth has the burden of proving each charge beyond a reasonable doubt. The prosecution is bound by the uncontradicted testimony of its seven witnesses which essentially proves not only that Juvenile was operating with due care, but also that Juvenile was not guilty of a safe speed violation, negligence and failure to take proper action to avoid the collision.[19]

The death that occurred when Decedent bailed out of his boat into the path of Juvenile's boat was unfortunate but was in no way proven to be the fault of Juvenile. It was simply the occurrence of an accident which this 15–year–old young man will have to live with for the rest of his life, but he should not be stigmatized with fault which was never proven, three convictions resulting from errors of law and a criminal homicide accusation of record that he does not deserve. All of his convictions of delinquency by the order of the trial court of May 9, 1997, are reversed.

Judge LEADBETTER dissents.

19. Juvenile presented no evidence.

## ORDER

NOW, April 28, 2000, the order of the Court of Common Pleas of Crawford County, dated May 9, 1997, at number and term JUV 1996–226, is hereby reversed.