2009 WY 12

**Kenneth Nathaniel SPAGNER,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

**No. S–08–0105.**

Supreme Court of Wyoming.

Jan. 30, 2009.

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N. Kerin, Appellate Counsel; Kirk A. Morgan,

Senior Assistant Appellate Counsel. Argument by Mr. Morgan.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny L. Craig, Interim Faculty Director, and Eric Thompson, Student Director, Prosecution Assistance Program. Argument by Mr. Thompson.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] The appellant was charged by Information with two counts of first-degree sexual assault and three counts of third-degree sexual assault. A jury found him guilty of all five crimes. The appellant contended below, and contends again on appeal, that the Information and its supporting affidavit afforded him insufficient notice of the charges against him, that the verdict form was flawed, and that the district court improperly allowed amendment of the Information to conform to the evidence. Finding no error, we affirm.

## ISSUES

[¶ 2] 1. Did the Information and Affidavit of Probable Cause adequately inform the appellant of the nature and cause of the accusation against him, as required by the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Wyoming Constitution, and of the essential facts constituting the offense charged, as required by W.R.Cr.P. 3(b)(2)?

2. Was there a fatal variance between the charges contained in the Information and the charges proven at trial, such as to deprive the appellant of his right to due process of law or his right to notice under the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Wyoming Constitution?

3. Did the district court abuse its discretion or deprive the appellant of his right to due process of law or his right to notice under the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Wyoming Constitution by granting the State's motion to amend Count I of the Information, after the State had rested and after the appellant had moved for a judgment of acquittal?

## FACTS

[¶ 3] The victim in this case is a female juvenile who was less than fourteen years of age during all times mentioned herein, and who sometimes lived with her mother and sometimes lived with her grandmother.[1] The appellant moved into the basement of the grandmother's house in August or September of 2005.[2] He moved out in March of 2007. On March 27, 2007, the victim told her grandmother that the appellant had been "raping" her. A medical examination revealed healed notches and tears in the victim's hymen, irregular tissue and formation of the hymen, and red tears and healed tears in her rectum.

[¶ 4] The primary issue in this case is whether there was a variance between the facts underlying the original charges and the facts proven at trial. Consequently, we will set out the facts as they appeared at various stages of the proceedings. The five counts of the Information were in statutory format, with the following relevant factual allegations:

1. Count I alleged forcible sexual intrusion between June 1, 2004 and July 31, 2004.

2. Count II alleged forcible sexual intrusion between November 1, 2003 and January 31, 2007.

3. Count III alleged sexual contact with a victim under the age of fourteen years between November 1, 2003 and January 31, 2007.

4. Count IV alleged sexual contact with a victim under the age of fourteen years between November 1, 2003 and January 31, 2007.

---

1. The victim was not biologically related to the two women, but that fact is of no consequence in this matter.

2. This date, which is significant, was established at trial by the grandmother's testimony.

5. Count V alleged sexual contact with a victim under the age of fourteen years between November 1, 2003 and January 31, 2007.

[¶ 5] The Affidavit of Probable Cause filed in support of the Information, which Affidavit was signed by the investigating officer, contained the following relevant factual allegations:

3. That between the 1st day of November, 2003 and 31st day of January, 2007, in Laramie County, Wyoming, 51–year–old Kenneth Nathaniel Spagner did commit multiple acts of sexual intrusion on [the victim].

That on 3/28/07, [the victim] reported to Cheyenne Police Officer L. Koeppel that Kenneth Spagner tried to "stick his 'thingie' (penis) inside of her" on several occasions within the past several years.

That [the victim] also stated the last incident was in January of this year (2007) in which Kenneth Spagner told her to take off her clothes and lay down. Kenneth then took off his clothes and laid on top of her.

That [the victim] stated Kenneth Spagner has tried to stick his "thingie" in her butt.

That Kenneth Spagner told [the victim] if she told anyone, she would "end up like the missing girls on TV."

That [the victim] said the incidents occurred in her [grandmother's] home.

That on 3/30/07 I, Detective J.F. Gay III, was assigned follow-up investigation for this case.

That on 4/2/07, a forensic interview was conducted with [the victim].

That during the forensic interview, [the victim] stated, substantially, the following:

A few weeks after Kenneth moved in with her family (November 2003) she was lying on the couch watching Drake & Josh (TV show) when Kenneth laid on top of her (clothed) and began moving up an[d] down trying to have sex with her. Kenneth was also trying to kiss her neck. Further, [the victim] felt a little bump with regard to Kenneth moving up and down. That after this incident Kenneth told [the victim] "If you tell them, I will kill you." That Kenneth was referring to [her grandmother and one of the grandmother's daughters] when saying "if you tell them."

Another incident occurred approximately during November 2004 (approximately 1 year later). [The victim] was sitting on a chair at her residence wearing loose fitting jeans. Kenneth put his hands in [the victim's] pants and touched her "pee-pee" (vagina). [The victim] said Kenneth kept holding on to her "pee-pee" while she was trying to get away from him. [The victim] was trying to kick Kenneth to get him away, but he continued touching her. Kenneth also allegedly unbuttoned [the victim's] shirt and was touching her "boobies" (breasts). During this incident Kenneth also told [the victim] if she told anyone, she would end up like the girls on TV.

Another incident occurred during the summer of 2004 (June–July; near or around July 4th). Kenneth told [the victim] to take off her clothes. She took off her pants because she didn't want to end up missing like the girls on TV as she was previously told. Kenneth unzipped his pants and pushed her down. [The victim] felt Kenneth's "dog" (penis) on her "pee-pee" (vagina). She said Kenneth stuck it in her, but couldn't get it all the way in. [The victim] also said yellow stuff would start running out of it ("dog").

On another occasion, Kenneth tried to stick his "dog" in [the victim's] "butt" (rectum). [The victim's] grandmother was sleeping when this happened. [The victim] heard Kenneth coming into the kitchen so she hid under the table. Kenneth found her and pulled her out from under the table. Kenneth held [the victim] down on her stomach and tried to stick his "dog" in her butt. Kenneth was not able to put it all the way in. [The victim] said this hurt her. Further, during a sexual assault exam, [the victim] told the Sexual Assault Nurse Examiner (SANE) [ ] that Kenneth put his penis in her rectum but had

to stop because his penis began to bleed (penis and rectum verbiage via SANE). During another incident, [the victim] slapped Kenneth in the face while he was rubbing up and down on her. She said Kenneth then raised his hand to slap her back, but he never did hit her. This incident occurred in the kitchen while Kenneth was cooking something in the microwave.

[The victim] stated Kenneth touched her "pee-pee" 11 or 12 times total. She never touched Kenneth's penis even though he had asked her to on several occasions.

Kenneth showed [the victim] a knife one time and told her, "If you tell, there is gonna be something happening to you." [The victim] said she thought Kenneth would kill her if she told anyone what was going on.

Another time Kenneth showed [the victim] two things that looked like "dogs" (penises). They were rubber and vibrated. Kenneth told her they were used on ladies who are lonely. [The victim] could not remember the colors, but thought they were pink and brown or yellow. She also thought Kenneth kept them in his backpack, but she could not provide a description of the backpack. It should be noted during the sexual assault exam, [the victim] described Kenneth rubbing a vibrator on her face and stomach. Further, upon interviewing Kenneth's girlfriend, [ ], she stated she once saw [the victim] put Kenneth's massaging vibrator between her legs. [The girlfriend] said [the victim] told her "this is what Kenny does."

[¶ 6]  The Sexual Assault Nurse Examiner who examined and interviewed the victim at the hospital testified during the trial, and a copy of her written report was admitted into evidence. That report contained the following "Sexual assault history as told by patient":

The first time he just got on top of me with my clothes and his clothes on. The second time he had his "thingy" out and put it on my tummy. The next time (3rd) he had me watch these girls and people having sex on the TV. He told me I should do what they do and watch this. I told him it was nasty and I will not watch it. Another time he showed me this fake "dog" (clarified by body picture it was the male penis) it was plastic and made noise. I think he has a pink one too. He put it on my chin and moved it down my body he stopped at my private part. He did not put it in me. He did put his thingy inside of my front and back (pointed to vagina and anus)[.]

Another time he tried to pull my pants off and put his "thingy" inside of me. He started to bleed and ran downstairs. Then another time after that he tried sucking on my boobs he pulled my pants down and saw the hair he made up a joke and said "Frog on a Log" and he put his "thingy" inside of me. Last time was about 2 months ago.

[¶ 7]  The victim, who was ten years old at the time of trial, also testified. Because the transcript of her testimony is lengthy, and is interrupted by many questions, we will not repeat it at length here, but will summarize the incidents she described:

1.  During the first incident, which happened a couple of weeks after the appellant moved into the house, the victim was in the front room watching "Drake and Josh" on television. After putting a hot dog in the microwave, the appellant put a tape in the VCR and made the victim watch it. The tape showed a man and a woman having sex. The appellant then got on top of the victim, rubbed her breasts, and began going up and down on her body. They were both fully clothed, but she could feel a "lump" that she indicated was his penis.

2.  The second incident occurred while the victim was on the couch in the front room, again watching television. The appellant got on top of her, again while both were fully clothed, and tried to kiss her on the neck. The victim slapped the appellant, at which point he raised his hand as if to slap her back, but he did not do so. When he began rubbing her breasts, she pushed him off and he left. The victim did not tell anyone what happened because the appellant told her that

she would come up missing like the girls on television. She understood that to mean that he would kill her.

3. In the third incident, the appellant came into the victim's room. He removed her shirt, and then his pants. He was not wearing underwear. He then got on top of her and began going up and down. He stopped and got off when she hit him.

4. The fourth incident took place in the victim's room at her mother's house. The appellant got on top of her while they were both fully clothed and began going up and down. He then touched her vaginal area, first on the outside of her clothing, and then inside her clothing. The incident ended when a neighbor responded to the victim's screams.

5. During a fifth incident, the appellant pushed the victim down on her back on the couch in her grandmother's front room. He pulled his pants and underwear down to his knees, then pulled her pants and underwear down to her knees, and began going up and down on her. During that process, the appellant attempted to insert his penis into both the victim's vagina and her anus. He stopped the attempts when the victim told him "it hurt."

6. A sixth incident occurred at the victim's mother's house in the wintertime. The victim was on the couch, playing PlayStation. The appellant pulled down the victim's pants and underwear, then pulled down his own pants and underwear and attempted to insert his penis into her vagina. When he got off her, the victim saw "yellow stuff" coming out of his penis.

[¶ 8] At the conclusion of the State's case, the appellant moved for a judgment of acquittal on the first count, on the ground that there was no evidence that any of the alleged crimes occurred during the period charged in that count. In response, the State moved under W.R.Cr.P. 3(e)(2)(B) to amend that count to change the alleged date of the occurrence from "between June 1, 2004 and July 31, 2004" to "between November 1, 2003 and January 31, 2007." The district court granted the motion to amend. The court then denied the appellant's motion for judgment of

acquittal on all counts, which motion was based upon the alleged vagueness and overbreadth of the allegations, particularly in regard to dates. The appellant preserved his arguments with an appropriate objection.

[¶ 9] Before closing arguments, the district court read to and gave the jury a verdict form that had been drafted by the State. That verdict form identified the counts by reference to specific evidence:

1. Count I, a first-degree sexual assault charge, was identified as "sexual intrusion on victim in both her vagina and her rectum at [her grandmother's] house."

2. Count II, a first-degree sexual assault charge, was identified as "sexual intrusion on victim in her vagina at [her mother's] house."

3. Count III, a third-degree sexual assault charge, was identified as "sexual contact of victim in front room of [her grandmother's] house while watching 'Drake and Josh' on T.V."

4. Count IV, a third-degree sexual assault charge, was identified as "sexual contact of victim in her room at [her grandmother's] house where she slapped the defendant."

5. Count V, a third-degree sexual assault charge, was identified as "sexual contact of victim in front room of [her mother's] house when she screamed and the neighbor came to the door."

## DISCUSSION

***Did the Information and Affidavit of Probable Cause adequately inform the appellant of the nature and cause of the accusation against him, as required by the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Wyoming Constitution, and of the essential facts constituting the offense charged, as required by W.R.Cr.P. 3(b)(2)?***

[¶ 10] An accused has a constitutional right to notice of the charges against him to allow him a fair opportunity to defend against the charges. United States Constitution, Sixth Amendment; Wyo. Const. art. 1 § 10. *See also,* W.R.Cr.P. 3;

*Derksen v. State,* 845 P.2d 1383, 1388–89 (Wyo.1993). Because the right to notice of criminal charges is of constitutional magnitude and the determination on the adequacy of the notice is a question of law, we review the issue *de novo. See, e.g., Pena v. State,* 2004 WY 115, ¶ 7, 98 P.3d 857, 862 (Wyo.2004).

*Barker v. State,* 2006 WY 104, ¶ 14, 141 P.3d 106, 112 (Wyo.2006). These constitutional provisions and the procedural rule require that an information (1) contain the elements of the offense charged; (2) fairly inform a defendant of the charges against which he must defend; and (3) enable a defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Estrada–Sanchez v. State,* 2003 WY 45, ¶ 13, 66 P.3d 703, 708 (Wyo.2003).[3] A detailed affidavit attached to the information may provide some of this information. *Capshaw v. State,* 11 P.3d 905, 910 (Wyo.2000).

[¶ 11] We have held that an information is sufficient if it is "in the words of the statute." *Crouse v. State,* 384 P.2d 321, 325 (Wyo.1963).[4] An information is required to set forth only "ultimate facts," as opposed to "matters of evidence," the latter phrase meaning "particulars as to manner or means, place or circumstance." *Id.* In particular, the allegation of a general time period is adequate in cases of child sexual abuse. *Vernier v. State,* 909 P.2d 1344, 1351 (Wyo.1996); *see also Baumgartner v. State,* 7 P.3d 912, 916 (Wyo.2000) (allegation of general time period sufficient when specific date not an element of offense). Even the mistaken allegation of an incorrect time period is not necessarily fatal to the sufficiency of an information. *State v. Koch,* 64 Wyo. 175, 189 P.2d 162, 166–67 (1948).

[¶ 12] In the instant case, the Information charged two counts of first-degree sexual assault and three counts of third-degree sexual assault, all in the words of the respective statutes. Thus, the appellant was fairly informed of the charges against which he must defend. The third factor in the *Estrada–Sanchez* test is also met because "given the breadth of the charging allegations and the vagueness of the proof as to time, place, and date," the State is precluded from further prosecuting the appellant for any sexual assault crimes against this victim during the full time period alleged. *State v. Wilcox,* 808 P.2d 1028, 1034 (Utah 1991).

[¶ 13] Finally, we note that Wyoming follows the rule that the sufficiency of an information is determined "from a broad and enlightened standpoint of right reason rather than from a narrow view of technicality and hairsplitting." *Gonzales v. State,* 551 P.2d 929, 931 (Wyo.1976) (quoting *Robbins v. United States,* 476 F.2d 26, 30 (10th Cir. 1973)). The key is whether the defendant has been "misled to his prejudice." *Id.* Here, where the Affidavit attached to the Information clearly indicated that the sexual assaults began after the appellant moved into the victim's grandmother's house, the appellant was not misled by a general date statement that included periods before he moved into the house. Beyond that, the lack of factual specificity goes not to the constitutional adequacy of the notice, but to the credibility of the State's case. *Wilcox,* 808 P.2d at 1033. While the Information and its supporting Affidavit, even in combination, are not models of clarity, we cannot say that they failed to give the appellant adequate notice of the five crimes with which he was being charged.[5]

### *Was there a fatal variance between the charges contained in the Information*

---

3. The content and form of informations is left to court rule by Wyo. Stat. Ann. § 7–1–106(c) (LexisNexis 2007).

4. The appellant cites repeatedly to *Heywood v. State,* 2007 WY 149, 170 P.3d 1227 (Wyo.2007), but this case is not like *Heywood,* where the underlying problem was not so much the drafting of the Information, but the drafting of the verdict form, the latter document utterly failing to differentiate one count from another.

5. The appellant waived his right to a preliminary examination, thereby giving up an opportunity to have the State's case more clearly defined. Furthermore, he waited another seven months before filing a motion for bill of particulars, which motion was denied because it was filed on the Friday before the start of trial on Monday, and because the district court determined that the separate counts could be identified via the verdict form.

*and the charges proven at trial, such as to deprive the appellant of his right to due process of law or his right to notice under the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Wyoming Constitution?*

[¶ 14] In his Brief, the appellant poses this question as being whether the district court erred in giving the jury a verdict form that identified instances that did not match the instances alleged in the charging documents, and contends that we must apply the same *de novo* standard of review that we applied to the first issue. By contrast, the State phrases the question as being whether the verdict form was a correct jury instruction, with our review being directed toward the question of whether the instructions allowed the jury to apply the law to the facts so as to leave no doubt as to the circumstances under which the crimes were committed. We surmise that the actual issue is as we have stated it above—was there a fatal variance between the charges alleged and the charges proven at trial? Because the question of a variance of this nature implicates the same constitutional notice requirements set forth above, we conclude that our review likewise should be *de novo*.

[¶ 15] Two major precepts govern the law of variances. First, a variance occurs when the evidence presented at trial proves facts different from those alleged in the information or indictment. Second, a variance is not fatal—that is, it does not require reversal of a conviction—unless the appellant could not have anticipated from the indictment or information what evidence would be admitted at trial, or the conviction would not bar subsequent prosecution. *See Mickelson v. State,* 2008 WY 29, ¶ 12, 178 P.3d 1080, 1084 (Wyo.2008); *Rawle v. State,* 2007 WY 59, ¶ 11, 155 P.3d 1024, 1027 (Wyo. 2007); *Estrada–Sanchez,* 2003 WY 45, ¶ 13, 66 P.3d at 708; and *Capshaw,* 11 P.3d at 910. Stated somewhat differently:

Such a variance is fatal where the instruction submits a new and distinct offense to the jury. *State v. Jones,* 930 S.W.2d 453, 455 (Mo.App. E.D.1996). Instructing on one form of the offense where the information charges another form of the same offense is not reversible error absent a showing that the variance between the information and the instruction is material and prejudicial. [*State v. Lee,* 841 S.W.2d, 648, 651 (Mo. banc 1992) ] Variances are material where they affect whether the defendant received adequate notice of the charges against him. *State v. Whitfield,* 939 S.W.2d 361, 366 (Mo. banc 1997). Variances are prejudicial where they affect the defendant's ability to defend the charge against him. *Id.*

*Weidt v. State,* 2002 WY 74, ¶ 9, 46 P.3d 846, 851 (Wyo.2002) (quoting *State v. Williams,* 18 S.W.3d 461, 469 (Mo.Ct.App.2000)). The gist of a fatal variance is that the appellant was misled to his prejudice. *Richey v. State,* 28 Wyo. 117, 201 P. 154, 156 (1921); 41 Am.Jur.2d *Indictments and Informations* § 254 (2005) (variance immaterial where not of character which could have misled defendant at trial).

[¶ 16] The appellant's contention is clear. He avers that, because a direct line cannot be drawn between five specific events described in the Affidavit of Probable Cause to the same five specific events described in trial testimony, there is a fatal variance in this case. He focuses upon the verdict form because the district court related each count therein to trial testimony, rather than to facts set forth in the Affidavit.

[¶ 17] We are not convinced that a variance occurred in this case. The Information charged the appellant with two counts of first-degree sexual assault and three counts of third-degree sexual assault. Those are the charges that went to the jury. Although the time frame during which these assaults were alleged to have occurred was lengthy, and the time period originally alleged for the first count was wrong, all of the conduct clearly was alleged to have occurred after the appellant moved into the victim's grandmother's house. That was the time period proven at trial. Further, although the victim's trial testimony did not exactly track the facts set forth in the Affidavit of Probable Cause, any reasonable defendant and his counsel would have anticipated that a ten-year-old victim of repeated sexual abuse might not give a verbatim recital of her earlier reports of the

crimes. Any discrepancies were fodder for cross-examination and closing argument, but there was not such a material difference in the description of the conduct as to constitute a variance.[6]

[¶ 18] Even if we were to find that a variance existed between the Information and the trial testimony, we would not find that it materially prejudiced the appellant. The number of charges remained the same, the nature of the charges remained the same, and the character of the evidence remained the same. Any discrepancies in the young victim's testimony did not mislead the appellant as to what he was there to defend. As noted above, the contrary was true—the testimonial differences inured to his benefit insofar as they undermined the victim's credibility. *Wilcox,* 808 P.2d at 1033.

***Did the district court abuse its discretion or deprive the appellant of his right to due process of law or his right to notice under the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Wyoming Constitution by granting the State's motion to amend Count I of the Information, after the State had rested and after the appellant had moved for a judgment of acquittal?***

[¶ 19] Through cross-examination, defense counsel established that all of the alleged sexual assaults occurred after the appellant moved into the victim's grandmother's house in 2005. At the end of the State's case, counsel then moved for a judgment of acquittal on the first count, which count alleged first-degree sexual assault between June 1, 2004 and July 31, 2004. In response, the State moved to amend the Information to allege an occurrence between November 1, 2003 and January 31, 2007, the same dates alleged in the other counts. The district court granted the motion.

[¶ 20] Motions to amend an information are governed by W.R.Cr.P. 3(e), which reads as follows:

(e) *Amendment of information or citation.*—Without leave of the court, the attorney for the state may amend an information or citation until five days before a preliminary examination in a case required to be tried in district court or until five days before trial for a case not required to be tried in district court. The court may permit an information or citation to be amended:

(1) With the defendant's consent, at any time before sentencing.

(2) Whether or not the defendant consents:

(A) At any time before trial if substantial rights of the defendant are not prejudiced.

(B) At any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

[¶ 21] We review a district court's decision to grant or deny a motion for leave to amend an information for an abuse of discretion, with that review focusing upon the question of whether the district court "could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious." *Wilkening v. State,* 2005 WY 127, ¶ 23, 120 P.3d 680, 687 (Wyo.2005) (quoting *Burton v. State,* 2002 WY 71, ¶ 44, 46 P.3d 309, 320 (Wyo.2002)). The admonitions in subsection (2)(B) that no additional or different offense is charged, and that the defendant not be prejudiced, are founded in the defendant's constitutional right to know the charges against him in order to be able to prepare a defense. *Meek v. State,* 2002 WY 1, ¶ 16, 37 P.3d 1279, 1284 (Wyo.2002).

[¶ 22] In large part, this issue has been decided against the appellant through our resolution of the first two issues. We have concluded that the appellant was not prejudiced by the claimed variance between the facts alleged and the facts proven. In particular, we have found that the appellant

---

**6.** Where time is not an essential element of an offense, the State need not prove the date of the offense with specificity. *Lee v. State,* 2001 WY 129, ¶ 11, 36 P.3d 1133, 1138 (Wyo.2001); *Stew-*

*art v. State,* 724 P.2d 439, 441 (Wyo.1986); 41 Am.Jur.2d *Indictments and Informations* § 262 (2005). The same is true of place. 41 Am.Jur.2d *Indictments and Informations* § 265 (2005).

was not misled by the dates stated in the Information and in the Affidavit of Probable Cause because it was always made clear that the events allegedly occurred after he moved into, and before he moved out of, the victim's grandmother's house.

[¶ 23] In opposing the motion to amend the date of the alleged offense in Count I, defense counsel argued that the appellant "has an absolute defense to this charge the way it is charged now." We do not believe that this is the type of "prejudice" that W.R.Cr.P. 3(e)(2)(B) contemplates. The appellant was not misled into believing that he actually was defending the allegation of a crime that took place in 2004. Rather, he was trying to take advantage of a clear mistake in a child sexual assault victim's recitation of dates. He was playing the judicial equivalent of "gotcha." In truth, no additional or different offense was charged via the amendment, and substantial rights of the appellant were not prejudiced.

## CONCLUSION

[¶ 24] The appellant was adequately informed of the charges against which he would be required to defend at trial, there was no fatal variance between the facts alleged and the facts proven at trial, and substantial rights of the appellant were not prejudiced by amendment of the Information.

[¶ 25] We affirm.