2009 WY 81

**Robert James HULSY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–08–0257.**

Supreme Court of Wyoming.

June 19, 2009.

697 S.W.2d 522, 524 (Tex.App. El Paso 1985); *People v. Myles,* 702 P.2d 292, 293 (Colo.App. 1985).

Representing Appellant: Diane Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel. Argument by Mr. Morgan.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny L. Craig, Assistant Attorney General. Argument by Ms. Craig.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] The appellant was convicted by a jury of felony interference with a peace officer. He contends on appeal that he was not adequately advised of the charge against him, and that the evidence was insufficient to prove both of the State's theories of guilt, the result being uncertainty as to whether a unanimous verdict was reached. We affirm.

## ISSUES

[¶ 2] The appellant states the issues substantially as follows:

1. Was the appellant denied a unanimous verdict by the State raising alternative theories of causation, when there is insufficient evidence to support both theories and it is impossible to determine which theory the jury selected?

2. Was the appellant denied his right to be properly advised of the specific nature and facts alleged against him, as provided under both the federal and the Wyoming constitutions, as well as Wyoming Rules of Criminal Procedure?

[¶ 3] The State re-phrases the issues as follows:

1. Was sufficient evidence presented to the jury to support the appellant's conviction?

2. Was there a fatal variance between the charge in the 1st Amended Information and the charge presented to the jury?

## FACTS

[¶ 4] On March 14, 2007, the appellant was engaged in a violent verbal and physical confrontation with an employee at a bar in Jackson, Wyoming. He was eventually subdued and restrained by bar employees and the appellant's roommate, while the manager telephoned for law enforcement assistance. Teton County Sheriff's Deputies Sachse and Stanyon responded to the scene. Upon their arrival, they noted that the appellant was restrained, yet still combative, and that he was threatening to "kill everyone." The deputies picked the appellant up from where he was being held on the floor, but he began spitting and kicking at them, so they took him back down to the floor. The deputies admonished the appellant and then picked him up again and began escorting him toward the exit.

[¶ 5] As the deputies tried to walk the appellant toward a stairway leading to the exit, the appellant resisted by planting his feet firmly on the floor, stomping his feet, and kicking at the deputies. Deputy Sachse

described the process as a "labored forcing walk." The three men started down the stairs, with one deputy on each side of the appellant. Just as they reached the second step, Deputy Sachse felt a sudden burst of energy and forward motion that carried him and the appellant down the stairs. He heard Deputy Stanyon scream out in pain at the same moment. Deputy Stanyon testified that the appellant, who was one step below him on the stairs, planted his right foot on the stair and kicked back directly at Deputy Stanyon with his left foot, striking Deputy Stanyon below the right knee. Though his knee was seriously injured, Deputy Stanyon assisted Deputy Sachse in forcing the appellant into the back seat of a patrol vehicle. Deputy Sachse then took Deputy Stanyon to the hospital emergency room before taking the appellant to jail. Deputy Stanyon's knee was surgically repaired the following day by an orthopedic surgeon.

[¶ 6] Deputy Sachse testified that, although he felt the sudden burst of energy that carried him and the appellant down the stairs, he did not see the appellant kick Deputy Stanyon because he was concentrating on watching the steps they were descending. The appellant's roommate, who had been assisting the deputies in trying to control the appellant, testified that he followed the trio toward the stairway, witnessed the appellant's struggling and resisting, and was directly behind them when the appellant's weight went forward and carried them down the stairs. He testified that he saw everything clearly and that the appellant did not kick Deputy Stanyon.

[¶ 7] The appellant initially was charged with multiple crimes, including interference with a peace officer, battery, aggravated assault and battery, and criminal trespass. After a preliminary examination in circuit court, he was bound over to the district court for trial on one count of felony interference with a peace officer, in violation of Wyo. Stat. Ann. § 6–5–204(b) (LexisNexis Supp.2008), which statute reads as follows:

A person who intentionally and knowingly causes or attempts to cause bodily injury to a peace officer engaged in the lawful performance of his official duties is guilty of a felony punishable by imprisonment for not more than ten (10) years.

## DISCUSSION

[¶ 8] We recently reiterated that both the issue of whether an accused has received adequate notice of the charges against him to allow him a fair opportunity to defend, and the issue of whether there was a fatal variance between the charge alleged and the charge proven at trial are reviewed *de novo.* *Spagner v. State,* 2009 WY 12, ¶¶ 10, 14, 200 P.3d 793, 798–800 (Wyo.2009). The appellant contends that these precepts were violated in the instant case because, while the 1st Amended Information and its supporting probable cause affidavit alleged only that the appellant injured Deputy Stanyon by kicking him in the right leg, the State changed its factual theory during trial. In his opening statement, for instance, the prosecutor said the following:

It's expected that J.R. [Jenkins] is going to tell you that he watched this whole thing and never saw that kick. He's going to tell you that instead the Defendant dropped his right leg down and lurched forward. *I don't care. I don't care what happened. I don't care if Mr. [Jenkins] saw the kick or not. Deputy Stanyon is going to say he saw it. The evidence is that Deputy Stanyon went down, either way. Whether it's because the Defendant lurched forward down the stairs or whether it's because he kicked Deputy Stanyon you'll have to decide, but something happened, something bad.*

(Emphasis added.) In addition, the prosecutor said the following to the jury during closing argument:

Everybody agrees Mr. Hulsy was a drunk, out of control, profane, obscene, abusive, combative jerk. Even the defense agrees with that, that's the evidence. The only disparity I even remember hearing has to do with the kick that dropped Deputy Stanyon to his knees. One witness says I watched him and it didn't happen. One witness says, I wouldn't—I couldn't have seen it with my circumstances being what they were. And one witness says I saw it,

he kicked me in the knee. I don't know that there's any other debate of fact.

*And I want you to understand something, the State isn't hanging their* [sic] *case on a kick, that's not what [this] case is about at all.* The Defendant's behavior was outrageous and inexcusable and it lead to the injury of a peace officer. He may have been drunk, but he understood what he was doing. Even his own friend told you that he had the intent to escape and the only thing that separates the lesser included offense of resisting arrest from the greater offense of interference is that you add injury to the equation and you have the greater offense.

(Emphasis added.)

[¶ 9] Several years ago, we described the constitutional and procedural principles underlying the notice and variance issues as follows:

"An [information] to be legally sufficient must fairly indicate the crime charged, must state the essential elements of the alleged crime and be sufficiently definite so that the defendant can prepare his defense and be granted protection from further prosecution for the same offense (double jeopardy)." *Gonzales v. State,* 551 P.2d 929, 933 (Wyo.1976). A defendant has a constitutional right when charged with a crime to be informed of the nature and cause of the charge against him. *Id.* at 930. The Sixth Amendment to the United States Constitution states in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation[.]" Similarly, Article 1, § 10 of the Wyoming Constitution provides in pertinent part: "In all criminal prosecutions the accused shall have the right ... to demand the nature and cause of the accusation."

The purpose of these constitutional requirements is to assure adequate notice of the accusations to the defendant to enable him to prepare a defense. *Vernier v. State,* 909 P.2d 1344, 1351 (Wyo.1996). The constitutional requirements are implemented in W.R.Cr.P. 3(b)(1), which provides that the information must be a "plain, concise and definite written statement of the essential facts constituting the offense charged." *Id.*

Under the constitutional requirements and the criminal procedure rule, an information is sufficient if it: 1) contains the elements of the offense charged; 2) fairly informs a defendant of the charge against which he must defend; and 3) enables a defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Id.* at 1351 (citing *Stewart v. State,* 724 P.2d 439, 440–41 (Wyo.1986)). A variance arises when the evidence presented at trial establishes facts that are different from those alleged in the indictment. *Capshaw v. State,* 11 P.3d 905, 910 (Wyo.2000) (quoting *Dunn v. United States,* 442 U.S. 100, 105, 99 S.Ct. 2190, 2193–94, 60 L.Ed.2d 743 (1979); and *United States v. Powell,* 982 F.2d 1422, 1431 (10th Cir.1992)). Similarly, a shift in the government's theory from the one set out in the [information] to that presented at trial may also constitute a prejudicial variance. *United States v. McClatchey,* 217 F.3d 823, 831 (10th Cir.2000). We will not reverse unless the variance affects the defendant's substantial rights. *Capshaw,* 11 P.3d at 910. Even in cases where an appellate court determines the existence of a variance, such a variance

"is not fatal unless the defendant could not have anticipated from the [information] what evidence would be presented at trial or unless the conviction based on an [information] would not bar a subsequent prosecution." 3 Charles Alan Wright, Federal Practice and Procedure § 516 at 27 (2d ed.1982); *see Stoner [United States v.]* 98 F.3d [527] at 536 [ (10th Cir.1996) ].

*Id.*

*Estrada–Sanchez v. State,* 2003 WY 45, ¶¶ 11–13, 66 P.3d 703, 708–09 (Wyo.2003). Earlier this year, we expanded upon these principles in *Spagner,* 2009 WY 12, ¶ 15, 200 P.3d at 800:

Two major precepts govern the law of variances. First, a variance occurs when the evidence presented at trial proves facts different from those alleged in the infor-

mation or indictment. Second, a variance is not fatal—that is, it does not require reversal of a conviction—unless the appellant could not have anticipated from the indictment or information what evidence would be admitted at trial, or the conviction would not bar subsequent prosecution. *See Mickelson v. State,* 2008 WY 29, ¶ 12, 178 P.3d 1080, 1084 (Wyo.2008); *Rawle v. State,* 2007 WY 59, ¶ 11, 155 P.3d 1024, 1027 (Wyo.2007); *Estrada–Sanchez,* 2003 WY 45, ¶ 13, 66 P.3d at 708; and *Capshaw,* 11 P.3d at 910. Stated somewhat differently:

> Such a variance is fatal where the instruction submits a new and distinct offense to the jury. *State v. Jones,* 930 S.W.2d 453, 455 (Mo.App. E.D.1996). Instructing on one form of the offense where the information charges another form of the same offense is not reversible error absent a showing that the variance between the information and the instruction is material and prejudicial. [*State v. Lee,* 841 S.W.2d 648, 651 (Mo. banc 1992)] Variances are material where they affect whether the defendant received adequate notice of the charges against him. *State v. Whitfield,* 939 S.W.2d 361, 366 (Mo. banc 1997). Variances are prejudicial where they affect the defendant's ability to defend the charge against him. *Id.*

*Weidt v. State,* 2002 WY 74, ¶ 9, 46 P.3d 846, 851 (Wyo.2002) (quoting *State v. Williams,* 18 S.W.3d 461, 469 (Mo.Ct.App. 2000)). The gist of a fatal variance is that the appellant was misled to his prejudice. *Richey v. State,* 28 Wyo. 117, 201 P. 154, 156 (1921); 41 Am.Jur.2d *Indictments and Informations* § 254 (2005) (variance immaterial where not of character which could have misled defendant at trial).

[¶ 10] We find the first issue readily resolved by a review of the trial transcript. There was sufficient evidence presented whereby the jury, if it found Deputy Stanyon's version of events more credible, reasonably could have determined beyond a reasonable doubt that the appellant intentionally and knowingly injured the deputy by kicking him in the leg. On the other hand, there was sufficient evidence presented whereby the jury, if it found Mr. Jenkins' version of events more credible, reasonably could have determined beyond a reasonable doubt that the appellant intentionally and knowingly injured the deputy by violently thrashing about and literally knocking them all down the stairs. *See Urrutia v. State,* 924 P.2d 965, 967 (Wyo.1996); and *Jennings v. State,* 806 P.2d 1299, 1302 (Wyo.1991). Ironically, the appellant's "defense" is, in one sense, no defense at all, because it admits all of the elements of the statutory crime. The only thing it does not admit is a specific evidentiary fact—the kicking—that the State chose to include in the charging document.[1]

1. It seems appropriate at this point to note that, because we are hesitant to raise issues on our own initiative, we have in this opinion simply responded to the issues raised by the parties. Nevertheless, we feel compelled to suggest that the actual question presented by these facts is whether the prosecutor violated a principle of law by inviting the jury to convict the appellant on a factual basis other than the one charged. "An information is required to set forth only 'ultimate facts,' as opposed to 'matters of evidence,' the latter phrase meaning 'particulars as to manner or means, place or circumstance.'" *Spagner,* 2009 WY 12, ¶ 11, 200 P.3d at 799 (quoting *Crouse v. State,* 384 P.2d 321, 325 (Wyo. 1963)). The fact of the kick is a matter of evidence, not an element of the crime. Specifically, the question is whether the State was limited to proving guilt by proving that the appellant injured the deputy by kicking him, because that was what was averred in the 1st Amended Information. This question should be answered by analyzing whether the extraneous matter contained in the charging document was "mere surplusage," and therefore need not be proven, or was "descriptive of an essential element of the charge," and therefore must be proven. *See State v. French,* 146 N.H. 97, 776 A.2d 1253, 1256 (2001); *State v. Brady,* 147 N.C.App. 755, 557 S.E.2d 148, 151 (2001); *Hall v. State,* 62 S.W.3d 918, 919–20 (Tex.App.2001); *Curry v. State,* 30 S.W.3d 394, 396–400, 403 (Tex.Crim. App.2000); *State v. Westbrooks,* 345 N.C. 43, 478 S.E.2d 483, 492 (1996); *State v. Harnum,* 575 A.2d 312, 313 (Me.1990); *People v. Young,* 12 Ill.App.3d 310, 297 N.E.2d 578, 581 (1973); *Mitchell v. Commonwealth,* 141 Va. 541, 127 S.E. 368, 373 (1925); *United States v. Cina,* 699 F.2d 853, 857 (7th Cir.1983); *United States v. Vento,* 533 F.2d 838, 870–71 (3d Cir.1976); *United States v. LeMay,* 330 F.Supp. 628, 630 (D.Mont. 1971); *United States v. Root,* 366 F.2d 377, 381 (9th Cir.1966); *United States v. Lamont,* 236 F.2d 312, 315 (2d Cir.1956); *Butler v. United States,* 20 F.2d 570, 573 (8th Cir.1927); *Mathews v. United States,* 15 F.2d 139, 142–43 (8th Cir.

[¶ 11] We do not agree with the appellant's attempt to equate this situation with what occurred in *Tanner v. State*, 2002 WY 170, ¶¶ 10–15, 57 P.3d 1242, 1245–46 (Wyo. 2002); *Bush v. State*, 908 P.2d 963, 966–68 (Wyo.1995); and *Fife v. State*, 676 P.2d 565, 568–69 (Wyo.1984). Each of those cases involved a crime containing alternative *elements.* The crime of burglary, for instance, occurs when an accused unlawfully enters premises *either* with the intent to commit larceny *or* with the intent to commit a felony. *See* Wyo. Stat. Ann. § 6–3–301(a) (LexisNexis 2007). Thus, the specific intent element of the crime of burglary may be proven by proving either of the specified intentions.

[¶ 12] While the crime of felony interference with a peace officer does, indeed, contain this same type of alternative element, the *Tanner, Bush, Fife* problem did not arise here because, prior to trial, the State responded to the appellant's oral "motion to elect" by opting to limit the charge to "knowingly and intentionally causing bodily [injury] to a peace officer," and eliminating the alternative of "attempting to cause bodily injury to a peace officer." The charge that went to the jury was limited to the single chosen alternative. Thus, the narrow issue presented to this Court is whether, by including in the 1st Amended Information the words "To wit: While resisting arrest did kick Teton County Sheriff's Deputy Todd Stanyon in the right leg, injuring Deputy Stanyon's right knee in the process[,]" the State limited itself to proving that the injury occurred in that fashion. The appellant presents that question to us as being a question of constitutional and procedural right to notice of the charge being brought against him.

[¶ 13] The parties, not surprisingly, take different approaches to this issue, neither of which, in the end, we find accurately addresses the legal question presented. The appellant insists that the State wrongfully shifted its theory of prosecution, thereby depriving him of notice of the State's theory of guilt, and thereby taking unfair advantage of the prosecutor's esteemed position in the

criminal justice system. *See United States v. Carter*, 236 F.3d 777, 785–86 (6th Cir. 2001); *United States v. McClatchey*, 217 F.3d 823, 831 (10th Cir.2000), *rev'd and remanded on other grounds by* 316 F.3d 1122 (2003); and *United States v. Solivan*, 937 F.2d 1146, 1150–51 (6th Cir.1991). The State, on the other hand, cites *Tanner v. State*, 2002 WY 170, ¶ 14, 57 P.3d 1242, 1246 (Wyo.2002), for the proposition that prosecutorial argument is not evidence, and for the related proposition that "courts determine the State's theories from its charging documents, its requested jury instructions, etcetera—from official record evidence, not from argument by counsel." *Id.* at ¶ 14, at 1246.

[¶ 14] A careful review of the entire record reveals, however, that the State did not shift its theory of prosecution. Instead, what happened was that the appellant chose to defend the allegation that he injured Deputy Stanyon by kicking him in the knee, by producing evidence that he injured Deputy Stanyon by thrashing and lunging about in such a fashion as to knock him down the stairs. The State simply took advantage of that defense and, in argument, pointed out that the net result was the same—the evidence proved the elements of the crime.

[¶ 15] As noted above, the appellant's argument is one of notice and due process. Both of those tenets are founded in the concept of prejudice, and the appellant simply cannot show prejudice here. There certainly was no surprise evidence. The State presented its case just as would have been reasonably expected by any competent trial counsel. The events of the night were presented basically in chronological order, with particular emphasis upon the appellant's conduct from the time the deputies arrived at the bar until the time the three men catapulted down the stairway. There is no suggestion that the State presented any evidence of which the appellant was not aware. In response, defense counsel presented a witness who said that, rather than kicking Deputy Stanyon, the appellant lurched forward, caus-

1926); 1 Mark S. Rhodes, *Orfield's Criminal Procedure Under the Federal Rules* § 7:59, at 523 (2d ed.1985); 41 Am.Jur.2d *Indictments and Informations* §§ 97–100 (Supp.2009). Having not

previously addressed this question, we are not inclined to make this a case of first impression on the matter because the issue was neither raised nor briefed by the parties.

ing the injury. The State simply took advantage of that evidence because it was equally probative of a violation of the statute. The bottom line is that, no matter how the question is presented, the appellant suffered no prejudice from what happened at trial.

## CONCLUSION

[¶ 16] Under applicable constitutional and procedural standards, the appellant was adequately advised of the charge against him, and there was sufficient evidence to support the verdict, which verdict was not the product of improper alternative charging.

[¶ 17] We affirm.