# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 84

### APRIL TERM, A.D. 2013

### July 11, 2013

MORRIS EUGENE GRIMES,

Appellant
(Defendant),

v.

S-12-0229

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
The Honorable John R. Perry, Judge

*Representing Appellant:*

Diane Lozano, State Public Defender, PDP; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel. Argument by Mr. Morgan.

*Representing Appellee:*

Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Theodore R. Racines, Senior Assistant Attorney General; Darrell D. Jackson, Faculty Director, PAP; Emily N. Thomas, Student Director, PAP. Argument by Ms. Thomas.

*Before KITE, C.J., HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Chief Justice.**

[¶1]    Morris Eugene Grimes was convicted after a jury trial of felony interference with a peace officer. On appeal, he claims the evidence that the officer was injured by his actions was insufficient to support the conviction. We conclude the evidence, viewed in accordance with our standard of review, supports the jury's decision. Consequently, we affirm.

## ISSUE

[¶2]    Mr. Grimes presents the following issue on appeal.

> I.      Whether there was sufficient evidence to support, beyond a reasonable doubt, a conviction for interference with a police officer in violation of Wyo. Stat. Ann. § 6-5-204(b)?

The State presents essentially the same issue.

## FACTS

[¶3]    On February 26, 2012, Mr. Grimes and his mother were guests at the Smart Choice Inn in Gillette, Wyoming. The motel also acted as a bus stop and tickets could be purchased from the motel staff. Gillette police officers Owen Kimberling and Chad Trebby responded to a call from motel staff about a disturbance involving Mr. Grimes. He was arguing with his mother and a motel staff member over bus transportation.

[¶4]    The officers persuaded Mr. Grimes to go to his room, but he returned to the lobby a short time later and began shouting profanity. When he ignored the officers' commands to quiet down, they arrested him for breach of the peace and handcuffed his hands behind his back. Mr. Grimes kicked the front doors of the motel as the officers were escorting him to Officer Trebby's patrol vehicle, so they made him walk backward the rest of the way.

[¶5]    Mr. Grimes refused to put his legs inside the vehicle and ignored the officers' warning that he would be "tased" if he did not comply. Officer Kimberling energized his taser on Mr. Grimes' leg, and he put his legs into the vehicle. The officers closed the door and continued to talk outside. Mr. Grimes manipulated his handcuffed hands by moving them from behind his back to his front, broke the overhead light and began pushing on the door and window with his feet, so the officers decided to remove him from the vehicle.

1

[¶6]     Officer Kimberling prepared the taser, and Officer Trebby opened the door.  Mr. Grimes immediately kicked Officer Kimberling in the chest causing him to fall backward onto the asphalt pavement.  As he was falling, Officer Kimberling tased Mr. Grimes.  The officers were eventually able to restrain Mr. Grimes after employing the taser several more times.  Although Officer Kimberling initially stated that he was not hurt, he developed back pain shortly after the incident and went to the emergency room.

[¶7]     The State charged Mr. Grimes with felony interference with a peace officer.[1]  At trial, Mr. Grimes' primary defense was the officers were not lawfully performing their duties because they used excessive force.  The jury returned a guilty verdict, and Mr. Grimes filed post-trial motions for a judgment of acquittal or new trial, which the district court denied.  After he was sentenced, Mr. Grimes filed a timely appeal to this Court.

## STANDARD OF REVIEW

[¶8]     In reviewing a claim that the trial evidence was insufficient to support a jury verdict,

> we examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial.
>
> *Anderson v. State,* 2009 WY 119, ¶ 6, 216 P.3d 1143, 1145 (Wyo. 2009), quoting *Martin v. State,* 2007 WY 2, ¶ 32, 149 P.3d 707, 715 (Wyo. 2007).

*Dawes v. State,* 2010 WY 113, ¶ 17, 236 P.3d 303, 307 (Wyo. 2010).

## DISCUSSION

[¶9]     Felony interference with a peace officer is prohibited by Wyo. Stat. Ann. § 6-5-204(b) (LexisNexis 2011):

---

[1] Mr. Grimes was also charged with felony destruction of property in violation of Wyo. Stat. Ann. § 6-3-201(a)(b)(iii) (LexisNexis 2011), but that charge was apparently dismissed because the value of the property destroyed was less than $1,000.

2

(b) A person who intentionally and knowingly causes or attempts to cause bodily injury to a peace officer engaged in the lawful performance of his official duties is guilty of a felony punishable by imprisonment for not more than ten (10) years.

Mr. Grimes claims the State failed to prove that he caused bodily injury to Officer Kimberling. He asserts the causation evidence was insufficient because the officer initially said he was unhurt and, although he later complained of back pain and sought medical treatment, there was no medical evidence to explain why there was a delay in the onset of pain. According to Mr. Grimes, there could have been an intervening cause of Officer Kimberling's back pain, such as slipping on the icy pavement or struggling with Mr. Grimes on the ground.

[¶10] In *Allen v. State,* 2002 WY 48, ¶ 42, 43 P.3d 551, 565-66 (Wyo. 2002), this Court stated that the state must prove the defendant's wrongful conduct was the proximate cause of the injury. Although *Allen* involved an aggravated vehicular homicide charge, the analysis is apt with regard to the interference with a peace officer charge. "To be the 'proximate cause,' the . . . injury must be the natural and probable consequence of the defendant's wrongful conduct; a 'substantial factor' in bringing about the injuries or death." *Id.,* citing *Bloomquist v. State,* 914 P.2d 812, 820 (Wyo. 1996), which quoted *Glazier v. State,* 843 P.2d 1200, 1204 (Wyo. 1992) and *McClellan v. Tottenhoff,* 666 P.2d 408, 414 (Wyo. 1983).

[¶11] As we stated earlier, our standard of review requires that we view the evidence in the light most favorable to the State and give it the benefit of all reasonable inferences. A permissible inference is defined as:

> An inference is a process of reasoning by which a fact or proposition is deduced fairly and logically from other facts proven or admitted. An inference is truly evidence. The weight to which it is entitled depends upon the facts and circumstances of each case * * *.

*Seeley v. State,* 959 P.2d 170, 176 (Wyo. 1999), quoting *Story v. State,* 721 P.2d 1020, 1025 (Wyo. 1986), *cert. denied,* 479 U.S. 962, 107 S. Ct. 459, 93 L. Ed. 2d 405 (1986). In applying this definition, "[t]here must be some connection between the proven fact and the inference drawn from it." *Mora v. State,* 984 P.2d 477, 481 (Wyo. 1999). Thus, a jury's inferences cannot be based upon mere speculation or conjecture. *Anderson v. State,* 2009 WY 119, ¶ 14, 216 P.3d 1143, 1147 (Wyo. 2009). In addition, we defer to the jury's determinations on the credibility of the witnesses and the weight of the evidence. *Id.,* ¶ 13, 216 P.3d at 1146-47.

3

[¶12]  Applying these principles to the present case, Officer Kimberling testified that he and Officer Trebby decided to remove Mr. Grimes from the patrol car because he was acting up and they were concerned about his safety.  He had broken the overhead light in the patrol car and was pushing on the door and window with his feet.  When the officers opened the door, Mr. Grimes immediately kicked Officer Kimberling in the chest with both feet causing him to fall on his back onto the asphalt.  The officers struggled with Mr. Grimes until he was finally restrained.

[¶13]  Although Officer Kimberling initially denied he was hurt, he testified that he began to feel pain in his lower back and right side while preparing his reports a short time later.  Video and audio recordings from the officers' patrol vehicles corroborate his testimony.  Officer Kimberling testified that he went to the emergency room and took two or three days off work as a result of the incident.  At the time of the trial, Officer Kimberling stated that he continued to have occasional pain in his back.  He also testified:

> Q.     Now, I noticed that there were a number of comments that you made regarding whether or not you thought you'd been hurt?
>
> A.     Yes.
>
> Q.     Could you tell right off the bat -- after you get Mr. Grimes handcuffed and placed in the car the second time, could you tell at that point if [you] were suffering from any pain?
>
> A.     No.   The only thing that I knew, and I believe you can hear it in the audio, was I had blood somewhere and it ended up being I had blood all over me, but initially I was out of breath, and, of course, my adrenaline was through the roof . . . and there was no pain initially.
>
> Q.     And I take it that later that changed?
>
> A.     Yes.
>
> Q.     And in what manner did it change?
>
> A.     I started having some pain, I would imagine probably from sitting in my vehicle until the drive to the detention center.  Once I got out, that's when I started having some pain.

4

> I've had pain before, you know, and I didn't really
> think nothing (sic) of it. After being at the detention facility
> for so long and then going back to the office is when I sat
> down and we were watching the videos and started reports,
> that's when I really started having bad pain.

[¶14]   The jury is charged with weighing the evidence and determining the credibility of the witnesses. Drawing reasonable inferences from the evidence and assuming the jury found Officer Kimberling to be credible, there was sufficient evidence that his injury was "the natural and probable consequence" of Mr. Grimes' wrongful conduct, and Mr. Grimes' action was a "substantial factor" in bringing about Officer Kimberling's injury. *Allen,* ¶ 42, 43 P.3d at 565-66. Officer Kimberling's testimony allows the reasonable inference that his back was injured when he was kicked to the ground by Mr. Grimes. In fact, there is no evidence of any other potential cause of Officer Kimberling's back pain, and Mr. Grimes' suggestion that the officer was injured by slipping or later in the altercation[2] is conjecture and speculation.

[¶15]   Mr. Grimes also argues that the lack of medical evidence undermines the State's case. Pursuant to § 6-5-204(b), a person is guilty of the offense if he causes "bodily injury" to the peace officer. Bodily injury is statutorily defined as "physical pain, illness or any impairment of physical condition." Wyo. Stat. Ann. § 6-1-104(a)(i) (LexisNexis 2011). We have stated that the "statute does not specify particular gradations of physical pain, illness or impairment." *Mascarenas v. State,* 2003 WY 124, ¶ 15, 76 P.3d 1258, 1265 (Wyo. 2003). Like in other cases, Officer Kimberling's testimony that he suffered pain was sufficient to establish the bodily injury element of felony interference with a peace officer. *See, e.g., King v. State,* 2002 WY 27, ¶ 5, 40 P.3d 700, 702 (Wyo. 2002) (officers testified the defendant's punches caused them pain); *Mascarenas,* ¶ 15, 76 P.3d at 1265 (bodily injury occurred when the defendant kneed the officer in the groin, causing him "severe discomfort"); *Mueller v. State,* 2001 WY 134, ¶¶ 6, 15, 23, 36 P.3d 1151, 1155, 1157, 1159 (Wyo. 2001) (evidence was sufficient to establish felony interference with two peace officers when they described having a headache and sore jaw after the altercation even though they may have denied being "hurt"). Although the State's case may have been stronger if it had presented medical evidence to explain the nature of Officer Kimberling's injury and the delay in the onset of his pain, the evidence

---

[2] Even if the injury occurred during the ensuing struggle, the evidence still may have been sufficient to support the conviction. In *Hulsy v. State,* 2009 WY 81, ¶¶ 5-6, 209 P.3d 901, 902-03 (Wyo. 2009), the appellant injured a deputy sheriff by either kicking him or violently thrashing about. We held that under either scenario, the elements of felony interference with a peace officer were satisfied. *Id.,* ¶ 10, 209 P.3d at 905. We do not, however, need to address whether Officer Kimberling was injured in the struggle rather than by the kick because the evidence is sufficient to support the inference that the officer was injured when Mr. Grimes kicked him to the ground.

was sufficient to support the reasonable inference that his back was injured when he fell to the ground after being kicked by Mr. Grimes.

[¶16]  Mr. Grimes directs us to two cases from other jurisdictions which he believes support his position that the causation  element was not satisfied in his case—*Commonwealth v. Moyer,* 648 A.2d 442 (Pa. Super. Ct. 1994) and *People v. Kent,* 444 N.E.2d 570 (Ill. Ct. App. 1982).  Neither of these cases is apposite.  In *Moyer,* 648 A.2d at 450-52, the defendant was charged with a number of crimes including  involuntary manslaughter  for hitting the victim, who was driving a jet ski, with his boat.  The Pennsylvania Superior Court ruled there was insufficient evidence that the defendant's wrongful conduct (driving a motorcraft too fast or while intoxicated) caused the victim's death.  Witnesses testified the defendant could not have avoided the crash because the victim suddenly swerved into his path, and the prosecution did not offer any evidence of reaction times to establish otherwise.

[¶17]  In *Kent,* 444 N.E.2d at 572-76, the defendant was charged with murder of her infant daughter after she admitted feeding the baby beer mixed with water.  The evidence established that the medical examiner had not performed tests during the autopsy  to establish, beyond a reasonable doubt, the cause of the infant's death was ingestion of alcohol.  In addition, there was evidence that other conditions, such as Reyes Syndrome, malnutrition and Sudden Infant Death Syndrome, could have led to the same autopsy findings.  The Illinois court of appeals, therefore, reversed the defendant's conviction.

[¶18]  In both *Moyer*  and *Kent,*  the evidence supported the conclusion that the defendant's actions were not the cause of the injury or death.  Here, by contrast, there is no evidence of any cause of Officer Kimberling's back injury other than being kicked to the ground by Mr. Grimes. The jury, which was charged with the task of determining the credibility of the witnesses and weighing the evidence, could have reasonably concluded the State proved beyond a reasonable doubt that Officer Kimberling was injured when Mr. Grimes kicked him.  We will not interfere with its decision.

[¶19]  Affirmed.